[Civ. No. 15106. First Dist., Div. One. Sept. 29, 1952.]

Estate of O. K. CUSHING, Deceased. THOMAS H. KUCHEL, as State Controller, Appellant, v. INA G. CUSHING, Individually and as Executrix etc., Respondent.

320

James W. Hickey, Chief Inheritance Tax Attorney, Charles J. Bary and Raymond G. La Noue, Deputy Inheritance Tax Attorneys, and J. D. Lear, Assistant Inheritance Tax Attorney, for Appellant.

Cushing, Cullinan, Duniway & Gorrill, Ben C. Duniway and Everett S. Layman for Respondent.

PETERS, P. J.—O. K. Cushing died testate, leaving almost all of his share of the community property to his wife, the respondent, Ina G. Cushing. The state inheritance tax appraiser claimed that the inheritance tax on the portion of the decedent's estate passing by the will to his widow amounted to $6,429.79. Respondent filed objections, claiming that the correct amount of the inheritance tax due from her was $5,775.87. The trial court sustained the objections, and fixed the amount of the inheritance tax in the amount claimed by respondent. The State Controller appeals from that order.

The solution of the controversy between the parties depends upon at what point in the administration proceedings the amount of the community estate that the wife receives, by virtue of her community property interest, free of the inheritance tax, is determined. In computing the wife's share of the community property that is free of the inheritance tax, (1) should the amount of the federal estate tax, or any part of it, be first deducted from the entire community estate, along with the expenses of administration, in order to determine the net community estate, or (2) should the entire community estate, less deductions other than the federal estate

tax, be first divided in half, and then the amount of the federal estate tax deducted from the husband's one-half passing to his wife by the will, and then the state inheritance tax rates applied to this figure? The appellant contends that the first part of this question should be answered in the affirmative, while respondent urges that the last part should be so answered. The proper solution depends upon an analysis of certain federal and state statutes together with an analysis of certain cases interpreting them.

The appeal comes before this court on an agreed statement. The facts are there clearly and concisely set forth. It there appears that O. K. Cushing died testate October 6, 1948, naming his widow, the respondent, residuary legatee and executrix of the will. All of decedent's estate, including certain property held in joint tenancy, is admittedly community property. The fair market value of the community estate at the time of death was $360,726.55, of which $107,446.89 was acquired prior to 1927, and $253,279.66 was acquired subsequent to that date. There were several bequests made to strangers in blood which the will provided should pass free from inheritance and estate taxes. The amount passing to such legatees, including the bequests of inheritance taxes, is $11,582.78. Respondent, during administration, received a family allowance of $28,000, which admittedly is subject to the inheritance tax, but free of the federal estate tax. The debts of decedent, expenses of funeral and last illness, taxes, and expenses of administration, other than the federal estate tax, amounted to $14,312.27. The inheritance tax appraiser fixed the federal estate tax (then not paid) at $19,930.68, but, after the report was filed, the federal government fixed the estate tax at $18,683.40. This is allowed as a deduction from the state inheritance tax, and the smaller figure is the correct figure to use for this purpose.

In computing the amount of the state inheritance tax, the appraiser took the fair market value of the entire estate and deducted therefrom all the allowable deductions, including the federal estate tax deduction. Then he divided the remainder by two, to arrive at the value of the community property owned by the widow and free of the inheritance tax. Using the proper amount of the federal estate tax, the figure so arrived at is $163,865.44, which is the value of the community property as fixed by the appraiser belonging to respondent free of inheritance tax. Computing the state in-

heritance tax on the balance, the amount thereof is $6,429.79, the amount claimed by the Controller to be due. No matter what language is used to describe this method of computation, its practical effect is to reduce the wife's share of the community property free of the inheritance tax by one-half of the amount of the federal estate tax.

The respondent and the trial court took the value of the entire community estate, deducted therefrom all of the allowable deductions except the federal estate tax, and divided the remainder by two to arrive at the community exemption. So computed, the community exemption amounts to $173,207.14, and the amount of the community passing to respondent by the will is reduced accordingly, so that the state inheritance tax is $5,775.87, the amount fixed by the trial court. In making such computation the trial court made no distinction between community property acquired prior to 1927 and such property acquired thereafter.

Thus, the question is whether the federal estate tax is a general charge against the entire estate which must be deducted from the entire estate before the widow's exclusion or exemption is computed, or whether such estate tax should be deducted entirely from the husband's one-half of the community passing to the widow by the will. The problem sounds complex, and it is.

Revenue and Taxation Code, section 13989, provides for a deduction for state inheritance tax purposes, of the amount of the federal estate tax paid on a transfer subject to the state inheritance tax, subject to certain limitations. It reads as follows: ''Any amount due or paid the Government of the United States as a Federal inheritance or estate tax in the estate of any decedent is deductible from the appraised value of property included in any transfer subject to this part made by the decedent. The amount deductible is limited to an amount computed by the inheritance tax appraiser upon an application of the Federal inheritance or estate tax exemptions and rates (commencing at the primary rates) in force at the date of decedent's death to that portion of the decedent's property the transfer of which is subject both to the tax imposed by this part, and to any Federal estate tax law, and upon his own valuation of that portion.''

The parties agree upon the amount of this deduction, but disagree as to whether it should be made before or after the wife's community half is deducted from the entire community estate.

Section 13551 defines the wife's community share that is not subject to the inheritance tax—the so-called community exclusion. So far as pertinent here, it reads as follows:

"Upon the death of a husband:

"(a) At least one-half of the community property is subject to this part.

"(b) The one-half of the community property which belongs and goes to the surviving wife pursuant to Section 201 of the Probate Code is not subject to this part. . . ."

Section 201 of the Probate Code provides: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code."

Section 202, thus referred to, reads in part as follows: "Community property passing from the control [note that the husband "controls" all of the community property—Civ. Code, §§ 172 and 172a] of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration and disposal under the provisions of Division III of this code. . . ."

Probate Code, section 203, to which reference is made in section 201, has no relevancy to the problem here involved.

The Controller contends that under these sections, as interpreted by the California courts, the federal estate tax must be deducted from the entire community estate before the value of the widow's share, owned by her by virtue of section 201 of the Probate Code is computed. Admittedly, debts of the husband and ordinary costs of administration, must be deducted from the value of the entire community property before the value of the widow's one-half is computed, under the express terms of Probate Code, section 202. The Controller contends that the federal estate tax, for state inheritance tax purposes, must be treated the same as an ordinary cost of administration.

It must be remembered that we are here concerned with a question of interpretation, that is, of legislative intent, and not with a question of legislative power. There can be no doubt that the state Legislature has the power to provide that the widow's one-half of the community property belonging to her and free of the inheritance tax shall not be ascertained until all deductions, including the federal estate tax,

are first deducted from the entire estate. The question here involved is whether the Legislature has so provided.

So far as the debts of the husband, and the ordinary costs of administration, are concerned, the Legislature, by section 202 of the Probate Code, has expressly provided that they must be deducted from the entire community estate before the wife's one-half share, free of the inheritance tax, is computed. *Estate of Coffee,* 19 Cal.2d 248 [120 P.2d 661], so held. In that case, decided in December, 1941, in determining the value of the widow's exclusion for inheritance tax purposes, it was held that the entire community property, proportionately of course with any separate property of the husband, was liable for the deceased husband's debts and expenses of administration, and that the community property interest of the widow should be determined by taking one-half of what was left after such debts and expenses were paid. The parties did not argue, and the Supreme Court did not give separate consideration to the question of whether the federal estate tax should be treated as a cost of administration, but simply assumed that such tax was an ordinary cost of administration.

Then, in *Estate of Atwell,* 85 Cal.App.2d 454 [193 P.2d 519], the District Court of Appeal in 1948 held, in reference to the estate of a husband who died in September, 1945, that the rule of the Coffee case should be applied to the deduction of the federal estate tax for state inheritance tax purposes. It held that such tax should be deducted from the entire community estate before the amount of the widow's one-half should be computed for state inheritance tax purposes. The court first held that the Coffee case was determinative of that issue, but then held that even if it were not, under the statutes, independently interpreted, such result must follow. The court came to the conclusion that the wife's community property interest is one-half of what is left after deducting debts and expenses of administration, including the federal estate tax. This decision was largely predicated upon the fact that, under the then existing law, the wife's share of the community property, for federal estate tax purposes, was part of the gross estate of the husband.

Respondent attacks the reasoning of the Atwell case and contends that the court there, in certain respects, incorrectly interpreted the statutes. These contentions need not now be discussed. The appellate court there gave careful consideration to all of the contentions now made on these points and found them without merit. The Supreme Court denied a

hearing. If that case is now to be overruled, the orderly administration of justice suggests that such should be done by the Supreme Court and not by another appellate court. We, therefore, hold that the Atwell case is determinative of the proper interpretation of the pertinent statutes there discussed as they existed in 1945.

Respondent next contends that the Atwell case is no longer controlling because of certain changes made in the federal estate tax law in 1948. There is no doubt that material changes in the federal estate taxation of community property in particular, and in the method of federal taxation of community property in general, did occur in 1948, and the question is whether such changes require a change in the interpretation of the California statutes providing for the method of computation of the state inheritance tax as set forth in the Atwell case. This requires an analysis of the various methods used over the years by the federal government for the estate taxation of community property. This discussion naturally divides itself into three periods.

1. The period prior to October 21, 1942: During this period there was no specific statutory provision relating to the taxation, for estate tax purposes, of community property. The governing section was section 811(a) of the Internal Revenue Code in title 26 of the U.S.C.A. It reads as follows: ''The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

''(a) To the extent of the interest therein of the decedent at the time of his death;''

The federal cases held that, under this section, there was a distinction in the community property taxation of California property for estate tax purposes between community property acquired prior to July 29, 1927,[1] and that acquired afterward. As to pre-1927 community property, it was held that the husband had sufficient interest so as to require taxation of the entire community as part of his gross estate. But as to post-1927 community property, it was held that the wife has a vested one-half interest, and that the husband did not have sufficient interest in her one-half to warrant taxation of it under section 811(a). Therefore, it was held, that the wife's

---

[1]The effective date of section 161a of the Civil Code granting to the wife a ''present, existing and equal'' interest in community property.

one-half share acquired after 1927 must be excluded from the taxable gross estate of the deceased husband. (See *Crocker First Nat. Bank* v. *United States,* 183 F.2d 149, for a discussion of these rules.) *Estate of Coffee,* 19 Cal.2d 248 [120 P.2d 661], was decided on December 31, 1941, during this so-called first period.

2. The period from October 21, 1942, to January 1, 1948: During this second period, under section 811(e)(2) of the Internal Revenue Code (and certain amendments to other sections of the law made to conform to that section) it was provided that all community property, whenever acquired, except earnings of the wife, was included in and taxable as a part of the community property of the husband upon his death.[2] *Estate of Atwell,* 85 Cal.App.2d 454 [193 P.2d 519], although decided on May 13, 1948, involved the law as it existed in 1945, the year of the death of the testator there concerned. In the decision of the Atwell case, section 811(e)(2) is referred to and relied upon. The section was repealed April 2, 1948, the date of the passage of the Revenue Act of 1948, which, by its terms, was made retroactive to January 1, 1948.

3. The period after January 1, 1948: Effective as of this date, for those dying thereafter, section 811(e)(2), and related sections were repealed, so that post-1927 community property was restored, for federal estate tax purposes, to the condition that existed prior to 1942, that is, but one-half thereof, for federal estate tax purposes, was to be included in the gross estate of either spouse who predeceased the other. Then, as a device to equalize the estate tax as between community and noncommunity property states, an elaborate "marital deduction" was put into effect by section 812(e).

So far as the problem here involved is concerned, the marital deduction so granted is limited to half of the property "passing" to the surviving spouse from the "adjusted gross estate" of the deceased spouse, which in California would include pre-1927 community property upon the death of a husband. Thus, by this section, pre-1927 community property, as well as separate property of the husband, is entitled to the marital deduction. Post-1927 community property, inasmuch as the wife's one-half does not "pass" to her upon the death of her husband, is not included in the adjusted gross estate for the purpose of determining the marital deduction, and,

---

[2] During this period there was no change in the rule that but one-half of the community property was taxable to the estate of the wife upon her death.

of course, the wife's one-half is not subject to the tax. (See generally, 36 Cal.L.Rev. 223, for a discussion of the marital deduction amendment.)

Do these amendments require a change in the interpretation of the inheritance tax statute announced in the Atwell case as to post-1927 community property? We think that they do. The Atwell case was decided at a time when the wife's share of the community, whenever acquired, except one-half of her community earnings, was included in the gross estate of the predeceased husband for federal estate tax purposes. By virtue of the 1948 amendments to the federal law, that is no longer true of post-1927 community property, but it is true of pre-1927 community property. One of the basic theories of the Atwell case is that the wife's share of the community property should bear its share of the impact of the federal estate tax levied upon the husband's one-half because the wife's share of the community property was part of the taxable gross estate of the deceased husband.[3] That reasoning still applies to pre-1927 community property and is here controlling as to such property. But that reasoning, since 1948, does not apply to post-1927 community property, and as to such property the question is still an open one so far as the Atwell case is concerned.

But, says the Controller, regardless of the Atwell case, the question is not an open one because of the decision of the *Estate of Coffee,* 19 Cal.2d 248 [120 P.2d 661]. That case was decided when the wife's share of post-1927 community property, by virtue of court decisions, was not part of the taxable gross estate of the husband, but nevertheless it held that all expenses of administration, including the federal estate tax, should first be deducted from the entire community property before computing the value of the wife's share that is free of the tax. It is true that the Coffee case so held, but in that opinion the federal estate tax deduction was not discussed separately from the general costs of administration, nor was it separately argued in the briefs. There was no evidence in the case as to what was pre- and what was post-1927 community property. ▮ The debts of the husband and the ordinary costs of administration are chargeable against the entire community property. Since no one urged

---

[3]The words ''gross estate'' are here used, and are used hereafter, to mean the gross estate as defined in section 811 of the Internal Revenue Code.

that the federal estate tax was any different from other cost of administration, and the court did not discuss the problem, we cannot assume that the court considered or passed upon the point. For that reason, the Coffee case is not controlling on this question.

The Controller admits that if, as to post-1927 community property, inclusion in the husband's taxable gross estate is the criterion, then, under the 1948 amendments to the federal estate tax law, the wife's share of the community property should not be charged with any part of the tax for the purpose of the computation of this tax for inheritance tax purposes. But he contends that inclusion in the husband's taxable gross estate is not the proper test. He urges that the test is whether the "probate estate" or the "gross estate" is liable for the federal estate tax. Admittedly, the wife's share is part of the "probate estate" of the husband, but, as to post-1927 community, is not part of the "gross estate."

It certainly would be reasonable to hold that, if the federal estate tax is payable from, or is a charge upon, the probate estate of the husband, for the purposes of the deduction allowed by the state inheritance tax, the federal estate tax should be, like the debts and ordinary charges of administration, deducted from the amount of the probate estate before the wife's one-half share in the community is computed. If the federal estate tax is a charge against the entire community property, then it differs in no material respect from other expenses of administration.

There seems to be no federal case that has passed upon the question. ▉▉▉▉ But an examination of the statute makes it reasonably clear that the federal estate tax is chargeable against, and is a lien upon, only the gross estate and not upon the probate estate. This is crystal clear so far as the tax lien is concerned. Section 827 of the federal law limits the lien of the tax to the "gross estate." It reads in part as follows:

"(a) Unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien. . . .

"(b) If the tax herein imposed is not paid when due, then the spouse, transferee, trustee, surviving tenant, person in possession of the property by reason of the exercise, non-

exercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under section 811(b), (c), (d), (e), (f), or (g), to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. . . ." There can be no doubt, and the parties agree, that the words "gross estate" in this section mean the same thing as the same words in section 811, defining the taxable estate. (*Detroit Bank* v. *United States*, 317 U.S. 329 [63 S.Ct. 297, 87 L.Ed. 304].)

But, says the Controller, other sections of the act impose a liability for the tax upon the probate estate of the decedent, that is, upon all the community property, and in this connection places his major reliance on sections 822(b) and 826 of the act, and upon certain federal cases.

Section 822(b) merely provides that the estate tax "shall be paid by the executor to the collector." Obviously, that section does not determine from what portion of the estate the tax shall be paid. Section 826 is a complicated section. It is divided into four subsections. The first two subsections read as follows:

"(a) If the tax herein imposed is not paid on or before the due date thereof the collector shall, upon instruction from the Commissioner, proceed to collect the tax under the provisions of general law; or appropriate proceedings may be commenced in any court of the United States having jurisdiction, in the name of the United States, to subject the property of the decedent to be sold under the judgment or decree of the court. From the proceeds of such sale the amount of the tax together with the costs and expenses of every description to be allowed by the court, shall be first paid, and the balance shall be deposited according to the order of the court, to be paid under its direction to the person entitled thereto. This subsection in so far as it applies to the collection of a deficiency shall be subject to the provisions of sections 871 and 891.

"(b) If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid

before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this subchapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution.''

The next two subsections, (c) and (d), operate similarly to subsection (b) in that they give the executor a right of contribution as against life insurance beneficiaries (c) and as against those who receive property by virtue of a power of appointment (d), when those two classes receive property, included in the gross estate, upon which the tax has been paid, unless the decedent directs otherwise in his will. But these two subsections deny the executor the right of contribution as to those two classes of property when a marital deduction has been given. The two subsections read, in part, as follows:

''(c) . . . In the case of such proceeds receivable by the surviving spouse of the decedent for which a deduction is allowed under section 812(e) (the so-called 'marital deduction'), this subsection shall not apply to such proceeds except as to the amount thereof in excess of the aggregate amount of the marital deductions allowed under such subsection.

''(d) . . . In the case of such property received by the surviving spouse of the decedent for which a deduction is allowed under section 812(e) (the so-called 'marital deduction'), this subsection shall not apply to such property except as to the value thereof reduced by an amount equal to the excess of the aggregate amount of the marital deductions allowed under section 812(e) over the amount of proceeds of insurance upon the life of the decedent receivable by the surviving spouse for which proceeds a marital deduction is allowed under such subsection.''

The Controller, by a most involved argument, seeks to spell out of these provisions a liability upon the probate estate for the federal estate tax. He urges that, while admittedly, it is for state law and not federal law to fix the final impact of the burden of the federal estate tax payment, the above sections fix the initial liability upon the probate estate. The language of the sections does not bear out this contention, but it is urged that certain federal cases have so interpreted the statute. An examination of the cases demonstrates that this contention is unsound. Appellant first cites *Shwab* v. *Doyle,* 269 F. 321 (which case was reversed in 258 U.S. 529 [42 S.Ct. 391, 66 L.Ed. 747]), claiming that the circuit court held that

the lien section—827, above quoted, referring only to the gross estate—is simply a remedial statute and does not define the scope of the imposition of the tax so as to limit it to the gross estate. While the language of the opinion of the circuit court relied upon by the Controller was in the portion of the opinion reversed by the Supreme Court, so that such language cannot now be considered as controlling, it may be that the Controller is correct in contending that that section refers only to a remedy and not to the imposition of the tax. However, it should be noted that section 827(b) specifically mentions the "spouse" of decedent and then limits her liability, along with the others mentioned "to property included in the gross estate." This would seem to indicate a broader application of the section than that contended for by the Controller. At any rate, the case cited is of no help on the problem here involved.

The same can be said of *Riggs* v. *Del Drago,* 317 U.S. 95 [63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131], cited by the Controller for the proposition that the entire probate estate is subject to the payment of the federal estate tax. The case stands for no such proposition. It merely held that New York could, consistently with the federal estate tax law, require by statute that the burden of the estate tax should be apportioned among all the beneficiaries of specific legacies as well as beneficiaries of the residue. The Supreme Court held that except for the limited provisions of subsection (c) of section 826, referring to proceeds of insurance, and subsection (d), referring to powers of appointment, the federal estate tax law did not fix who should bear the ultimate burden of the tax—that it is left to state law to determine "where that final impact shall be." (P. 101.) The case does not hold that there is any general tax liability placed, by federal law, on the probate estate.

*Young Men's Christian Assn.* v. *Davis,* 264 U.S. 47 [44 S.Ct. 291, 68 L.Ed. 558], is in accord with the Riggs case, and, like it, of no aid to appellant. It simply held that state law can finally determine the burden of the tax so as to place it upon the residuary estate, even if the burden thus falls on charitable institutions which, because of their nature, have caused an allowance of a deduction to the estate.

*United States* v. *Woodward,* 256 U.S. 632 [41 S.Ct. 615, 65 L.Ed. 1131], not only does not support appellant, but contains language in support of respondent. The holding of the case is that the payment of the estate tax under the

then existing federal law provided for an income tax deduction for that year for the estate. The very broadest language used in the opinion for supporting the contention that the federal estate tax is chargeable against the probate estate, definitely indicates that such tax is a charge only against the gross estate. The language is as follows (p. 635): "It is made a charge on the estate and is to be paid out of it by the administrator or executor substantially as other taxes and charges are paid. It becomes due not at the time of the decedent's death, as suggested by counsel for the Government, but one year thereafter, as the statute plainly provides. It does not segregate any part of the estate from the rest and keep it from passing to the administrator or executor for purposes of administration as counsel contend, but it is made a general charge on the *gross estate* and is to be paid in money out of any available funds or, if there be none, by converting other property into money for the purpose." (Italics added.)

Reference is also made to certain circuit court cases. No useful purpose would be served by analyzing them separately. Not one of these cases refers to the problem of whether the probate estate is liable above and beyond the taxable gross estate.

Thus we must conclude that under federal law there is no liability of the decedent's probate estate for the estate tax. As we have already seen, the wife's share of the post-1927 community is not part of the taxable gross estate of the predeceased husband. Do these factors have any relevancy in interpreting the state inheritance tax? We think that they do.

As already pointed out, section 13989 of the Revenue and Taxation Code, subject to certain limitations, provides for a deduction for state inheritance tax purposes of the amount of the federal estate tax, which is to be deducted "from the appraised value of property included in any transfer subject to this part." Section 13551 of that code provides that "the one-half of the community property which belongs and goes to the surviving wife pursuant to Section 201 of the Probate Code" is free of the inheritance tax. Section 201 of the Probate Code provides that upon the death of the husband "one-half of the community property belongs to the surviving spouse." Then section 202 of the Probate Code provides that all of the community property passing from the "control" of the husband either by reason of his death or by his will "is subject to his debts and to administration."

As already held, debts of the husband and ordinary costs of administration are thus made a charge against the entire community estate. That is by state law. By federal law, the federal estate tax is not a charge against the entire estate, but is a lien upon and is payable from only the "gross estate," from which the widow's one-half of post-1927 community property is excluded. Thus, the federal estate tax, unlike the ordinary cost of administration, is not made a charge against the wife's share of the community property.

The respondent places a great deal of reliance on the proration statute (Prob. Code, §§ 970-977), and contends that such statute conclusively determines that the wife's share of the community should not bear any portion of the impact of the federal estate tax. Respondent spells out of these sections a conclusive intent that the widow's one-half of the community is not to be charged, directly or indirectly, with any portion of the payment of the estate tax. ██ That statute so provides, but its provisions, for the most part, are permissive and not compulsory. (See *Estate of Hotaling*, 74 Cal.App.2d 898 [170 P.2d 111].) The importance of the proration statute, in our opinion, is not that it conclusively determines how the deduction of the estate tax shall be prorated, but that it indicates a general state policy that should be used in interpreting the other provisions of the state law to which reference has already been made. There can be no doubt that the proration statute definitely expresses a policy that the federal estate tax is intended, in the absence of an expression to the contrary, to be levied, for state inheritance tax purposes, in accordance with the benefit that a person interested receives from the estate—and such benefit is, as already pointed out, limited to the taxable gross estate, and does not extend to the entire probate estate. ██ In other words, the proration statute, in the absence of direction in the will to the contrary, expresses a general state policy directing the executor to pay the federal estate tax and to fix the impact of the tax upon each beneficiary's share of the property that has contributed to the tax. The wife's share of the community property, as already pointed out, under federal law, has not contributed to the tax. ██ The proration statute, at least, suggests a general state policy to make only those charges that are charges against the entire estate deductible before the wife's one-half of the community property is computed, and to deduct all charges not chargeable against

the entire community estate from the husband's one-half of the property. This general policy is important in interpreting the other statutes above quoted.

█ It follows from what has been said that the California statutes indicate that the widow's one-half of the post-1927 community property, since it is not part of the "gross estate" of the husband and is not liable for the federal estate tax, should not be charged, directly or indirectly, with any portion of the federal estate tax. █ This reasoning does not apply to pre-1927 community property, and, as to it, *Estate of Atwell* is controlling. The trial court did not deduct any portion of the federal estate tax before dividing the value of the entire community property by two to ascertain the value of the wife's one-half share that is free of the inheritance tax. It deducted the entire federal estate tax from the husband's share and thus arrived at an inheritance tax of $5,775.87. This was error. The trial court should have deducted from the value of the entire community property, as an ordinary cost of administration, the portion of the federal estate tax that was levied against the pre-1927 community property before dividing by two to ascertain the value of the wife's one-half share that is free of the inheritance tax. The parties have agreed that, computed in this fashion, the correct value of the community exemption is $168,919.26, instead of $173,-207.14, as fixed by the trial court, and that the correct amount of inheritance tax on the property passing to respondent by the will is $6,076.02, instead of $5,775.87 as fixed by the trial court.

The order appealed from is reversed, and the trial court is directed to modify its findings, conclusions and order in accordance with the views herein expressed, and to enter its order fixing the inheritance tax due from respondent at $6,076.02. Each side to bear its and her own costs on this appeal.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's and respondent's petitions for a hearing by the Supreme Court were denied November 25, 1952.