243 Cal.App.2d 516 (1966)
Estate of EDWARD H. McLAUGHLIN, Deceased. FIRST WESTERN BANK AND TRUST COMPANY, as Executor, etc., Petitioner and Appellant,
v.
EVA MAE DUIT, Objector and Respondent.
Civ. No. 29713. 
California Court of Appeals. Second Dist., Div. Two. 
July 15, 1966.
 Vaughan, Brandlin, Robinson & Roemer and Walter R. Trinkaus for Petitioner and Appellant.
 O'Melveny & Myers, Sidney H. Wall, E. Harley Walther, and T. E. Calleton for Objector and Respondent.
 ROTH, P. J.
 Testator Edward McLaughlin died on December 19, 1962. His gross estate for federal estate tax purposes was $2,575,744.43.
 [1a] Testator, in his will, directed: "Third: I give, devise and bequeath the sum of $40,000.00 cash lawful money of the United States, but not in excess of five (5%) per cent of the distributable assets of my estate, to Mrs. Louis E. Duit. ..." First Western Bank and Trust Company is the executor and appellant. Eva Mae Duit (Mrs. Louis E.) is respondent.
 Respondent is also the beneficiary of a $20,000 insurance policy on the testator's life.
 Clause Fifth gives the residue of his estate to his five children.
 By codicil, there was a gift of $10,000 to one Gladys Harnden in language similar to that of paragraph Third, limiting the bequest to 2 1/2 percent of the distributable estate.
 In its fourth and final accounting, executor interpreted the *518 language of paragraph Third to require a proration of federal estate taxes and charged respondent with California inheritance taxes. Respondent objected to this interpretation in its application to paragraph Third. She conceded the validity of the tax burden on the insurance proceeds.
 The trial court held that the language of the will was clear and unambiguous and directed a tax-free bequest. Extrinsic evidence was offered to explain a claimed latent ambiguity. An objection thereto was sustained.
 [2] It is axiomatic, of course, that in construing a will, the intention of the testator is controlling (Prob. Code, 101; Estate of Salmonski, 38 Cal.2d 199, 209 [238 P.2d 966].) [3] But the intention of the testator is that expressed by the language of the will. (Estate of Beldon, 11 Cal.2d 108, 112 [77 P.2d 1052]; Estate of Wilson, 184 Cal. 63, 66-67 [193 P. 581].) Where the language is clear and unambiguous, extrinsic evidence may not be admitted to explain that language. (Estate of Carter, 47 Cal.2d 200, 206, 209 [302 P.2d 301].)
 [4] The trial court did not err in refusing to admit the proffered evidence.
 Probate Code, section 970 provides for proration of federal estate taxes among the beneficiaries of an estate "except in a case where a testator otherwise directs in his will. ..." The section expresses a general public policy of the state in favor of proration (Estate of Cushing, 113 Cal.App.2d 319, 333 [248 P.2d 482].) It has been said, therefore, that only a clear and unambiguous direction of the testator will free a beneficiary from his share of the tax burden. (Estate of Armstrong, 56 Cal.2d 796, 802 [17 Cal.Rptr. 138, 366 P.2d 490].)
 The question at bench is whether the grant of paragraph Third above quoted is a clear and unambiguous expression of intent by the testator. The trial court concluded that it was, and we agree.
 Respondent received a bequest of $40,000 or 5 percent of the "distributable estate," whichever is less. Both parties agree that the words "distributable estate" refer to the amount remaining in the estate after payment of debts and expenses, including federal estate taxes. (Estate of Bauer, 59 Cal.App.2d 152, 158, 159 [138 P.2d 717]; see In re Meynen's Estate, 173 Misc. 19 [18 N.Y.S.2d 62, 64].) Thus, in Bauer, the court referring to an opinion by Chief Justice Taft, says at page 159:
 "In 28 American Jurisprudence 8, section 3, it was stated in referring to the federal estate tax: 'It is not a tax on what *519 comes to the beneficiaries or heirs, but upon what is left by the decedent. It is treated as an expense of administration, as a proper disbursement by an executor. ... The tax comes into existence before and is independent of the receipt of the property by the legatee or distributee.' The case of Hepburn v. Winthrop, supra, 83 F.2d 566 [65 App. D.C. 309, 105 A.L.R. 310], stated at page 572 in referring to the provision of the Internal Revenue Code that the estate tax was to be paid before distribution: 'This implies that the tax is of the nature of an administrative expense. ... It is therefore not a payment as to which the beneficiaries have any concern. It is not a charge against either legatees or distributees.' "
 It seems clear to us that had paragraph Third in its entirety read "I give ... $40,000 ... of the distributable assets of my estate. ..." that such a direction would be clear and certain. It seems equally clear that the respondent would have received her bequest free from estate tax liability if no amount had been mentioned, and if the directions were to give respondent 5 percent of the distributable assets of the estate. [fn. 1]
 This interpretation is fortified by the decision of this court in Estate of Anthony, 230 Cal.App.2d 766 [41 Cal.Rptr. 317]. In that case, the specific bequest read: "... I further direct that the legacies in [the legatee's] favor created by my said Will ... are hereby to be increased so that the total amount to be received by her from my estate ... shall aggregate the sum of one hundred thousand dollars ... provided, however, that the total amount so to be received by her shall not exceed twenty per cent (20%) of the total net value of my estate available for distribution after payment of federal estate taxes *520 upon or from my estate." (Id at p. 769.) The amount of the estate was such that the legatee was to take under the 20 percent limitation clause. In determining whether proration should have been made, the court said, at p. 773: "Here, the testator directed that the federal taxes be paid 'from my estate' before computing whether the intended $100,000 bequest would exceed 20 per cent of the total net value of the estate, in which event the bequest would be reduced to the 20 per cent figure. However, in its computation, the trial court charged her with her pro rata share of such taxes. This we deem to have been error. The bequest to appellant is to be free of federal taxes."
 [5] The proration statute was designed to prevent the consumption of the residue by taxes where the testator made specific bequests to others. The inequity of such an event is obvious where, as here, the specific legatee or devisee is a stranger and the residue, as is most common, goes to the widow and children (see Work of the 1963 Legislature, 17 So.Cal.L.Rev. 1, 31; cf. Wells Fargo Bank & Union Trust Co. v. Older, 50 Cal.App.2d 724 [123 P.2d 873].) In the case at bench, however, the testator has provided for protection of the residuary legatees by ensuring that in no event could they receive less than 92 1/2 percent [fn. 2] of the estate after debts, expenses and taxes.
 We conclude, therefore, that the language of the bequest in question is clear and not in conflict with the public policy of this state.
 [6] The California inheritance tax, however, is not imposed on the estate; it is imposed on the transfer to the legatee (Rev. & Tax. Code, 13401, 13601). [7] Although, as an administrative matter, the personal representative pays the tax in the first instance, the transferee is ultimately liable for the tax out of the property transferred. (Rev. & Tax. Code, 14101, 14121; Cohn v. Cohn, 20 Cal.2d 65 [123 P.2d 833].)
 In Cohn, at pages 67, 68, the court says:
 "Generally speaking, the state assesses the privilege of succeeding to property, and computes the tax upon the interests of the legatees or devisees and the degree of relationship, if any, to the decedent. (Estate of Wilmerding, 117 Cal. 281 [49 P. 181]; Estate of Miller, 184 Cal. 674 [195 P. 413, 16 A.L.R. 694]; Estate of Watkinson, 191 Cal. 591 [217 P. 1073]; *521 Estate of Bloom, 213 Cal. 575 [2 P.2d 753]; Estate of Rath, 10 Cal.2d 399 [75 P.2d 509, 115 A.L.R. 836].) The tax is not one of the expenses of administration or a charge upon the general estate of the decedent; it is collectible out of each specific share or interest to which the beneficiary succeeds, and not from the general property of the estate. (Estate of Wilmerding, supra; Estate of Kennedy, 157 Cal. 517 [108 P. 280, 29 L.R.A. N.S. 428]; Estate of Chesney, 1 Cal.App. 30 [81 P. 679] [citation].) Under the Inheritance Tax Act of 1921 (Stats. 1921, p. 1503, 3; Deering's Gen. Laws, 1923, Act 8443), which was in effect at the date of Charles Cohn's death, the inheritance tax constitutes a lien upon the property passed or transferred, and executors and administrators are liable for it. By section 9 of the act, any executor or administrator having in charge any legacy or property for distribution, is directed to deduct the tax therefrom, or, if the property be not money, he is directed to collect the tax thereon from the legatee. Under these sections, therefore, the personal representative of the estate is primarily liable for the payment of the tax and it is chargeable against the money and other property of the estate in his hands. However, the fact that the executor or administrator must pay the tax and is authorized to deduct the amount assessed against the distributive share of each person inheriting or succeeding to the estate does not change the nature of the tax as one upon the right to inherit. The provisions concerning collection of the tax are administrative in character; they do not fix the liability for it upon the estate. (Hostetter v. United States, 113 F.2d 64.)"
 [8] A testator may by specific language direct a bequest to be paid to the beneficiary free of inheritance tax. (Estate of Nesbitt, 158 Cal.App.2d 630, 632 [323 P.2d 474]; Estate of Anthony, 230 Cal.App.2d 766, 774 [41 Cal.Rptr. 317].) In such case, the tax is borne by the estate rather than the legatee. The narrow question at bench on this facet of paragraph Third is whether the testator had such an intention.
 [1b] The testator does not say specifically in paragraph Third, as is true in Nesbitt, supra, that the bequest must be free of inheritance tax. Since the inheritance tax is a tax on the transfer, it is logical to assume that the testator intended the legatee to pay the tax. Otherwise the legacy would necessarily have to be in an amount more than $40,000, to wit: a sum in addition, sufficient to pay the inheritance tax on $40,000, or on the 5 percent, if it were less than $40,000. This means that inheritance tax on the increased legacy would also *522 be greater than the tax on the original $40,000, and so on, until the legatee received an amount which would net her $40,000 or 5 percent of the distributable estate. There is also a question as to the exact amount of the distributable estate. Thus, if the distributable estate were exactly $800,000, 5 percent would give to the legatee $40,000. However, if the distributable estate were required to pay the inheritance tax on the $40,000, there would no longer be a distributable estate of $800,000. We do not assert that this reasoning is conclusive, but in the absence of an expressed intention of the testator, the difference between the nature of an estate tax and an inheritance tax (Estate of Bauer; Cohn v. Cohn, supra), and no specific authority to the contrary, it does appear to us to be sound and equitable.
 The order is affirmed with respect to the federal estate taxes and reversed with respect to the state inheritance taxes, with directions to the court to make the proper adjustments.
 Herndon, J., and Fleming, J., concurred.
 If the $40,000 bequest of "distributable assets" were to be read separately, and we assume a net distributable estate of $799,999.99, on appellant's theory respondent would receive $39,999.99 free of further apportionment under the 5 percent limitation in the bequest. By adding two cents to the net or distributable estate, which would become $800,000.01, the respondent would receive $40,000, subject to proration. The proration, of course, would reduce the bequest considerably below $40,000. The hypothesis indicates that the $800,000.00 threshold is determined after the taxes are paid by the estate, and whether respondent receives 5 percent or $40,000, she receives that amount free of estate tax liability.
NOTES
[fn. 1] 1. In a sense, of course, respondent would be sharing the tax burden by taking only a percentage of an amount already reduced by payment of taxes. This, however, is not proration under Probate Code, section 970. Proration depletes the amount actually determined to be received by the legatee or devisee. It can be said that in this sense, appellant's interpretation of the bequest at bench requires double payment of taxes by respondent. The same argument does not apply to the $40,000 bequest read alone. However, any other construction of the language used by the testator leads to a strained result.
[fn. 2] 2. The limitations on the bequest to respondent and Gladys Harnden are 5 percent and 2 1/2 percent of the distributable estate respectively.