11 Cal.App.3d 204 (1970)
89 Cal. Rptr. 748
Estate of ELIZABETH WINONA HENDRICKS, Deceased.
GEORGE HAMMON HENDRICKS, Petitioner and Respondent,
v.
SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, Objector and Appellant.
Docket No. 12215.
Court of Appeals of California, Third District.
September 14, 1970.
*206 COUNSEL
Pillsbury, Madison & Sutro, Noble K. Gregory, Robert W. Morrison, George C. Fisher and Robert L. Sullivan, Jr., for Objector and Appellant.
Joseph P. Van Den Berg for Petitioner and Respondent.
OPINION
FRIEDMAN, J.
This appeal embodies a controversy between a residuary charitable legatee and relatives of the testatrix receiving specific bequests under the will. The relatives seek to have federal estate taxes and state inheritance taxes paid from the residue, and the probate court upheld their position. The charitable legatee, Shriners Hospitals for Crippled Children, appeals, contending that the death taxes should be prorated against the entire estate.
Elizabeth Hendricks, the testatrix, executed a 1954 will and a 1956 codicil which had the effect of leaving her personal belongings to several relatives; two parcels of Butte County real estate to certain relatives and their children; an interest in a corporate-held farm to certain relatives; the residue in trust to a bank, the bulk of the residue's income to be paid to the Shriners Hospitals. Neither the will nor codicil contained any express provision for the payment of death taxes.
Probate Code section 970 calls for equitable proration of the federal estate tax among the persons interested in the estate "except in a case where a testator otherwise directs in his will...." Section 970 expresses a state public policy that estate taxes be prorated. (1) "... [A]pportionment of the taxes is the general rule to which exception is to be made only when there is a clear and unambiguous direction to the contrary. Ambiguities are to be resolved in favor of apportionment." (Estate of Armstrong (1961) 56 Cal.2d 796, 802 [17 Cal. Rptr. 138, 366 P.2d 490].) As the *207 statute distinctly declares, a direction against apportionment must appear in the will.
(2) The state inheritance tax is a succession tax on the interest transferred to each beneficiary, generally payable out of that beneficiary's share rather than the estate itself. (See Rev. & Tax. Code, §§ 14121, 14122, 14123; Cohn v. Cohn (1942) 20 Cal.2d 65, 68 [123 P.2d 833].) (3) A testator may direct a bequest to be paid to the beneficiary free of the inheritance tax, a direction which causes the tax to fall upon the estate. (Estate of McLaughlin (1966) 243 Cal. App.2d 516, 521 [52 Cal. Rptr. 543]; Estate of Nesbitt (1958) 158 Cal. App.2d 630, 632 [323 P.2d 474].) California case law declares the necessity of "specific language" to free a special bequest from the financial burden of the inheritance tax. (Estate of McLaughlin, supra.) Some, but not all the cases, imply that this specific language must appear in the will (e.g., Estate of Nesbitt, supra). (4) Since such a direction augments the net amount receivable by the beneficiary and decreases the net amount of the residuary estate, it is testamentary in character and should be expressed in the will.
In this case the probate court held a hearing, heard testimony and made findings. The testimony was not recorded by a phonographic reporter. Over the objection of Shriners Hospitals the court entered findings declaring, in effect, that Mrs. Hendricks had intended to keep the specifically bequeathed properties in her family; that she had intended her relatives to receive these properties free of the death taxes; that proration would force a probate sale of these properties to get cash to pay the taxes. The court entered a decree declaring that "decedent's Will so providing," federal estate and state inheritance taxes would be paid from the residue and not charged to the specific legatees and devisees.
(5) Shriners Hospitals has appealed on the clerk's transcript. On this kind of appeal the reviewing court may not inquire into the adequacy of the evidence to support the findings or into the admissibility of oral evidence; rather, "... we are confined to the question whether the judgment is supported by the findings and whether reversible error appears on the face of the record." (Associated Creditors' Agency v. Dunning Floor Covering, Inc. (1968) 265 Cal. App.2d 558, 559 [71 Cal. Rptr. 494].)
Although the decree finds provisions in Mrs. Hendricks' will for tax payment from the residue, one scans the will and codicil in vain for any reference to taxes. The reference simply does not exist. Respondents point to provisions of the will directing that the specific bequests "go to" the named relatives. They view these as an expression of the testatrix's intent to bequeath without subtraction, an expression which (if inadequate) may be fortified by extrinsic evidence of intent found by the probate court. They *208 rely upon Probate Code section 105 which, generally speaking, permits extrinsic evidence to construe ambiguous will provisions.
The question is not one of construction at all. (6) Probate Code section 970 requires that a direction against proration appear in the will. It points to the will document as the exclusive medium for an expression of the testator's intent to prohibit proration. According to the prevailing California rule, an exception to the statutory proration policy occurs only when the will contains an unambiguous direction to the contrary; any ambiguity must be resolved in favor of apportionment. (Estate of Armstrong, supra, 56 Cal.2d at pp. 802-803; Estate of Cummings (1968) 263 Cal. App.2d 661, 669 [69 Cal. Rptr. 792]; Estate of Wakefield (1968) 258 Cal. App.2d 274, 279-280 [65 Cal. Rptr. 664]; Estate of McLaughlin, supra, 243 Cal. App.2d at p. 518; Estate of Neider (1966) 243 Cal. App.2d 102, 108 [52 Cal. Rptr. 47].)
(7) Extrinsic evidence of intent cannot be utilized to construe an ambiguous direction on this subject, because the very existence of the ambiguity demands proration. If the will is not ambiguous, evidence of intent dehors the will is inadmissible; if it is ambiguous, the evidence is unavailing. The matter was aptly put in a surrogate's opinion frequently cited by the New York courts: "The question of allocation should not be approached as would a construction question.... In a tax allocation problem the text of the will is to be scanned only to see if there is clear direction not to apportion; and if such explicit direction is not found, construction of text ceases because the statute states the rule." (In re Mills' Estate (1946) 189 Misc. 136 [64 N.Y.S.2d 105, 110]; affd. In re Mills' Will, 272 App.Div. 229 [70 N.Y.S.2d 746], affd. 297 N.Y. 1012 [80 N.E.2d 535] (italics in original).)
Respondents rely upon decisions which dispense with an express provision against proration if it otherwise appears from the will that the testator intended no proration. (Estate of Anthony (1964) 230 Cal. App.2d 766, 773 [41 Cal. Rptr. 317]; Estate of Allen (1954) 125 Cal. App.2d 502 [270 P.2d 510]; Estate of Pearson (1949) 90 Cal. App.2d 436 [203 P.2d 52]; Estate of Hotaling (1946) 74 Cal. App.2d 898 [170 P.2d 111].) These cases do not hold that an ambiguous declaration may be bolstered by extrinsic evidence. Precision is a question of degree. In Estate of Anthony the testatrix provided language which reflected on the distribution of the tax burden in unarguable terms. The Allen, Pearson and Hotaling cases all involved wills drafted prior to the 1943 adoption of Probate Code section 970. All leaned heavily on case law antedating the statute, when "any language fairly indicating" an intent not to prorate would be given effect. The dominant California doctrine is that declared in Estate of Armstrong, supra, that is, a *209 direction against proration must be "clear and unambiguous" in order to be effective.
(8) Since there is no expression in Mrs. Hendricks' will designating a source for the payment of death taxes, the taxes must be prorated. Error appears on the face of the record. The judgment is reversed with a direction to enter a decree consistent with this opinion.
Pierce, P.J., and Janes, J., concurred.
A petition for a rehearing was denied October 5, 1970, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied November 10, 1970.