38 Cal.App.3d 890 (1974)
113 Cal. Rptr. 727
Estate of WATSON DARK, Deceased.
SANTA BARBARA NATIONAL BANK, as Executor, etc., et al., Petitioners and Respondents,
v.
SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, Objector and Appellant.
Docket No. 42958.
Court of Appeals of California, Second District, Division Two.
April 30, 1974.
*891 COUNSEL
Price, Postel & Parma, H. Clarke Gaines, Timothy A. Whitehouse and C. Michael Cooney for Objector and Appellant.
Griffith & Thornburgh, Peter J. Samuelson, Eric R. Van DeWater, Goux, Romasanta & Anderle, J.F. Goux, Schramm, Raddue & Seed, John W. Warnock and Howard M. Simon for Petitioners and Respondents.
*892 OPINION
FLEMING, J.
Shriners Hospitals for Crippled Children appeals the denial of its motion to set aside preliminary distribution in the estate of Watson Dark and the overruling of its objections to the final account and petition for final distribution. The issue is proration of federal estate taxes.
Dark died testate in January 1972 leaving an estate of nearly $1 million. His brief will made six specific bequests to individuals of corporate stock comprising about half his estate and then provided: "Any and all costs, expenses and inheritance taxes that may arise from the probating of this Will shall be paid from the residue of my estate. The rest and remainder of my estate, I give, devise and bequeath to the Shriner's Hospital for Crippled Children at Los Angeles, California." In July 1972 the court granted the executor's petition for preliminary distribution of the specific bequests of corporate stock. In December 1972 the executor filed its final account and petition for distribution. Thereafter Shriners moved to set aside the earlier preliminary distribution and objected to the executor's final account and prospective distribution, claiming it should prorate the $150,000 federal estate tax among all beneficiaries rather than charge the entire amount against the residuary estate. The court rejected Shriners' contention, concluding (1) the preliminary distribution impliedly ruled against proration, and Shriners' objections were untimely, (2) Dark by his will intended to charge all federal estate taxes against his residuary estate.
(1) On procedure we disagree with the probate court's conclusion that the preliminary distribution impliedly concluded the issue of proration of federal estate taxes. Probate Code section 974 requires only that before final distribution the executor shall pay the federal estate taxes or file "evidence of a written agreement for the payment of the estate tax, executed between the federal taxing authority and the executor, administrator, or persons interested in the estate." Determination of federal estate taxes may take several years (see Note, Testamentary Trusts: Tax Liability of Fiduciaries, 39 So.Cal.L.Rev. 567, 570), but the public policy of California favors the earliest possible distribution of estates. (Prob. Code, §§ 1000-1003; Estate of Toler, 49 Cal.2d 460, 467 [319 P.2d 337].) Since preliminary distribution of assets of an estate discharges neither the executor nor the distributees from liability for federal estate taxes (Int. Rev. Code, § 6901) and since the court may direct payment of federal estate taxes by those in possession of estate property (Prob. Code, § 975), the preliminary distribution undertaken here neither necessarily nor actually determined the proration of federal estate taxes.
*893 (2a) On the merits we agree with the probate court that Dark intended to charge all federal estate taxes against his residuary estate. (3) Because public policy favors proration of estate taxes among the beneficiaries of an estate (Prob. Code, § 970), a testator must express his intention not to prorate. (Estate of Armstrong, 56 Cal.2d 796, 802 [17 Cal. Rptr. 138, 366 P.2d 490]; Annot. 37 A.L.R.2d 7.) However, no specific language is required for such expression (Estate of McAuliffe, 132 Cal. App.2d 476, 479 [282 P.2d 541]), and the courts construe the language in each will in the light of the particular circumstances of the case. (Estate of Hotaling, 74 Cal. App.2d 898, 903 [170 P.2d 111].) (2b) At bench, the circumstances strongly suggest that Dark intended the specific bequests to pass to his beneficiaries without deduction for costs of administration or for taxes. From the simple language of his page-and-a-half will we conclude that Dark intended the words, any and all costs, expenses and inheritance taxes, to encompass federal estate taxes. (Thomas v. Fox (1964) 348 Mass. 152 [202 N.E.2d 912, 913];[1]In re Crozier's Estate (1964) 105 N.H. 440 [201 A.2d 895, 896];[2] see Annot. 37 A.L.R.2d 7, 83-86.) In the context of this will we construe the phraseology, any and all ... expenses and inheritance taxes ... from the probating, as sufficiently comprehensive in scope to include federal estate taxes. No reason appears why Dark would undertake to relieve his specific beneficiaries (relatives, employees, and friends) of the lesser burden of administrative costs and inheritance taxes but continue to hold them subject to the greater burden of federal estate taxes. The logic of our construction is reinforced by the paragraph in the will which declares that dividends paid after Dark's death on the corporate stock specifically bequeathed shall belong to the beneficiaries and not to the estate.
*894 We conclude the federal estate taxes were properly charged against the residuary estate. The judgment is affirmed.
Roth, P.J., and Beach, J., concurred.
A petition for a rehearing was denied May 23, 1974, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1974.
NOTES
[1] "The crucial provision of the will is: `1. I direct that all my debts, including funeral expenses, expense of my last illness, the expenses of the administration of my estate and all inheritance taxes be paid by my executors, hereinafter named, out of the first moneys coming into their hands and available therefor.' By `all inheritance taxes' the testator is to be assumed to have meant both State and Federal taxes. [Citations.]

"The precise issue is whether this provision clearly transfers the tax burden from the legatee to the residue. We are of opinion that it does." (Thomas v. Fox, supra, at p. 913.)
[2] "The first paragraph of the will of Annie G. Crozier, deceased September 23, 1962, reads as follows: `I direct the payment of all my just debts, funeral charges, expenses of administration and inheritance taxes out of my estate as soon as practicable after my decease.... Considering the context of the present will as a whole we conclude the testatrix used the phrase `inheritance taxes' in its popular nontechnical sense." The court then concluded that both inheritance and federal estate taxes were chargeable against the residuary estate. (In re Crozier's Estate, supra, at pp. 895-897.)