[Civ. No. 43681. First Dist., Div. Two. Mar. 19, 1979.]

Estate of JESSE C. CARLEY, Deceased.
HOWARD H. JACKSON, as Co-executor, etc., et al.,
Petitioners and Respondents, v.
ANN C. HUBBARD, Claimant and Appellant;
KATHLEEN MITCHELL, Claimant and Respondent.

## Counsel

Hubler, Burford, Moran & Quirk and John F. Quirk for Claimant and Appellant.

Cavalero, Bray, Shumway & Geiger, Cavalero, Bray, Geiger, Rudquist & Kelly and John B. Rudquist for Claimant and Respondent.

## Opinion

**KANE, J.**—The appeal at hand involves the interpretation of the will of decedent Jesse C. Carley and deals with the specific issue of whether federal estate and state inheritance taxes should be borne by the residuary (probate) estate or the taxable estate of the decedent. The facts pertaining to the matter are simple, and may be stated as follows:

Appellant Ann C. Hubbard is the niece of the decedent and the residuary heir of his estate. Kathleen Mitchell, a cousin of the decedent (hereafter respondent), is a conditional beneficiary under the will who received her legacy, a joint tenancy bank account valued at $29,227, by right of survivorship. The will in dispute, dated July 20, 1975, was admitted to probate by a court order of December 2, 1976. Since the pertinent clause of the will (clause five) provided in broad terms only that "All estate and inheritance taxes levied or assessed shall be paid *out of my estate*" (italics added), the co-executors petitioned the superior court for instructions as to whom the estate and inheritance taxes should be charged.

At the hearing below, the parties took diametrically opposite positions. Appellant argued that clause five of the will mandated that all death taxes

be apportioned among the beneficiaries of the gross taxable estate, and as a consequence respondent was liable for the pro rata share of the federal estate and California inheritance taxes on the joint tenancy property. In turn, respondent maintained that both the federal estate and the California inheritance taxes were chargeable against the residue of the probate estate. Since the joint tenancy funds were received outside of probate, respondent contended that she was entitled to them free and clear of all death taxes.

By interpreting the provisions of the will without aid of extrinsic evidence, the probate court found that the intention of the decedent, as expressed in clause five, was that all death taxes be paid out of the residuary estate.

In determining whether the trial court's interpretation was correct, we initially observe that where, as here, a will is construed solely upon the terms of the written instrument without the aid of extrinsic evidence, the appellate court is not bound by the interpretation given to the instrument by the lower court. Rather, it is free to determine the meaning of the instrument in accordance with the accepted canons of interpretation (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]).

With these introductory remarks, we now turn to the substantive issue raised on appeal, i.e., the interpretation of clause five in light of the statutory provisions, the underlying legal policy and the pertinent case law.

To begin with, we emphasize that in a drastic deviation from the previous law whereby the federal estate tax was a charge solely upon the probate estate, in 1943 the California Legislature adopted a new statutory scheme (Prob. Code,[1] §§ 970-977), the essence of which is that death taxes ought to be prorated among beneficiaries. Thus, section 970 explicitly provides that estate taxes shall be prorated over the "gross" estate, that is, the entire taxable estate, unless the testator otherwise directs in his will.[2]

---

[1] Unless otherwise indicated, all references will be to the Probate Code of California.

[2] Section 970 reads as follows: "*Whenever it appears* upon any accounting, or in any appropriate action or proceeding, *that an executor,* administrator, trustee or other fiduciary *has paid an estate tax to the Federal Government* under the provisions of any Federal estate tax law, now existing or hereafter enacted, *upon or with respect to any property required to be included in the gross estate of a decedent* under the provisions of any such law, *the amount of the tax so paid, except in a case where a testator otherwise directs in*

■ The cases explain that the legal policy and objective sought to be accomplished by the proration statute is the equitable allocation of the burden of the tax among the persons actually affected by that burden (*Estate of Buckhantz* (1953) 120 Cal.App.2d 92, 98-99 [260 P.2d 794]; *Security First Nat. Bank* v. *Wellslager* (1948) 88 Cal.App.2d 210, 213-214 [198 P.2d 700]). As the court put it in *Estate of Cushing* (1952) 113 Cal.App.2d 319, 333 [248 P.2d 482], "There can be no doubt that *the proration statute definitely expresses a policy that the federal estate tax is intended*, in the absence of an expression to the contrary, *to be levied*, for state inheritance tax purposes, *in accordance with the benefit that a person interested receives from the estate* . . . . In other words, *the proration statute, in the absence of direction in the will to the contrary, expresses a general state policy directing the executor to pay the federal estate tax and to fix the impact of the tax upon each beneficiary's share of the property that has contributed to the tax.*" (Italics added. Accord: *Estate of Armstrong* (1961) 56 Cal.2d 796, 800 [17 Cal.Rptr. 138, 366 P.2d 490].)

In accordance with the above cited statutory language and legal rationale, the cases unanimously hold that the apportionment of death taxes is the general rule to which exception is to be made only when there is a clear and unambiguous direction to the contrary either in the will or the trust agreement, and that any ambiguity appearing in the instrument must be resolved in favor of apportionment (*Estate of Hendricks* (1970) 11 Cal.App.3d 204, 206, 208 [89 Cal.Rptr. 748]; *Estate of Cummings* (1968) 263 Cal.App.2d 661, 669 [69 Cal.Rptr. 792]; *Estate of Wakefield* (1968) 258 Cal.App.2d 274, 279-280 [65 Cal.Rptr. 664]; *Estate of McLaughlin* (1966) 243 Cal.App.2d 516, 518 [52 Cal.Rptr. 543]).

■ When viewed in light of the foregoing principles and the general rules of interpretation, clause five must be deemed either to be ambiguous or to have a definite meaning to the effect that the death taxes shall be paid out of the gross taxable estate of the decedent. In either case the lower court's conclusion directing the payment of death taxes out of the residuary estate was erroneous.

Preliminarily, we reiterate that in clause five the decedent provided no more than "All estate and inheritance taxes levied and assessed shall be

*his will*, and except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such inter vivos instrument, *shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues.*" (Italics added.)

paid out of *my estate."* (Italics added.) As pointed out in *Estate of Armstrong, supra,* 56 Cal.2d at page 801, the word "estate" when used generally is ambiguous because it could mean either probate estate or taxable estate. Since in the present instance the words "my estate" were used without further qualification, their ambiguity under *Armstrong* is readily apparent.

If, however, we carry our analysis one step further and attempt to decipher the meaning of the words "my estate," it becomes all the more clear that the phrase in question means gross taxable estate rather than probate estate.

In so concluding, we place special emphasis on the circumstance that the phrase "my estate" was used in connection with federal estate and inheritance taxes. In defining "estate" for the purpose of proration of death taxes, section 977, subdivision (b), states that " 'Gross estate' or 'estate' means all property included for Federal estate tax purposes in determining the Federal estate tax pursuant to the Federal estate tax law." Since the joint tenancy asset in dispute is unquestionably included in the estate for the purposes of federal estate tax, and since the decedent is presumed to have known the California law (including the statutory definition of "estate") when he drew his will (cf. *Estate of Heard* (1957) 49 Cal.2d 514 [319 P.2d 637]), the conclusion is inescapable that by directing the payment of all estate and inheritance taxes out of his estate the decedent meant that the tax burden be borne by his entire taxable estate, not the residuary or probate estate.

This result finds powerful support in *Estate of Armstrong, supra,* 56 Cal.2d 796, a case directly in point. The testatrix in *Armstrong* directed her executor or executrix to pay out of her estate all debts, expenses and all estate and inheritance taxes.[3] Similar to the present case, the principal issue in *Armstrong* was whether the death taxes were to be paid out of the probate estate or the gross taxable estate. In concluding that the federal estate and state inheritance taxes were chargeable against the entire taxable estate of the testatrix, the Supreme Court spelled out that in the absence of a clear testamentary intention to the contrary, the fundamen-

---

[3] The pertinent paragraph of the will read as follows: " '*I direct my executor or executrix to pay out of my estate all* my just debts, funeral *expenses,* expenses of administration, *and all estate and inheritance taxes* which may become due by my death, without limitation to property passing under my will.' " (P. 801, italics added.)

tal policy of this state requires prorating; that ambiguities in the will must be resolved in favor of apportionment; and that in light of section 977 defining "estate" for the purposes of death taxes, the words " 'my estate' " were not specific and clear enough to abrogate the general rule of proration and to switch the tax burden upon the probate estate (pp. 800-802).

We are satisfied that none of the cases cited by respondent support the proposition that the testamentary language used in the instant case calls for the payment of death taxes from the residuary estate. Unlike the case at bench which uses the general and ambiguous phrase "my estate" without further qualification or explanation, the cases referred to by respondent contain either specific language that the death taxes be paid out of the residuary or probate estate and/or other specific and clear indication that the tax burden be not borne by the individual legatees or other beneficiaries. Thus, in *Estate of Dark* (1974) 38 Cal.App.3d 890, 892 [113 Cal.Rptr. 727], the will provided that " 'Any and all costs, expenses and inheritance taxes that may arise from the probating of this Will shall be paid *from the residue of my estate. . . .*' " (Italics added.) In *Estate of McLaughlin, supra,* 243 Cal.App.2d 516, 517, the testator directed in his will as follows: " 'Third: I give, devise and bequeath the sum of $40,000 cash lawful money of the United States, but not in excess of five (5%) per cent of the *distributable assets of my estate,* to Mrs. Louis E. Duit . . .' " (italics added). In *Estate of Moore* (1958) 165 Cal.App.2d 455, 456 [322 P.2d 108], the pertinent part of the will read as follows: " 'I direct that all estate, inheritance or other taxes that may become payable during the period of the administration of my estate shall be paid by my executors *out of the residue and remainder of my estate*' " (italics added). In *Estate of McAuliffe* (1955) 132 Cal.App.2d 476, 477-478 [282 P.2d 541], the will set out in part that " 'all Federal estate and State inheritance or estate taxes . . . *be paid by my estate and not chargeable to the beneficiaries*' " *(italics added)*. Finally, we note that *Estate of Nesbitt* (1958) 158 Cal.App.3d 630 [323 P.2d 474] contradicts rather than supports respondent's position. In *Nesbitt,* the will provided that the death taxes must be borne by the general estate, which under the case interpretation means the residue of the estate (pp. 632-633). Due to the circumstance that after paying the debts and expenses and after distributing the bequests and legacies no residuary estate remained, the court deviated from the explicit provision of the will and charged Miss Johnson, the individual legatee, with a pro rata tax share. In short, *Nesbitt* bolsters appellant's argument and allows proration in an equitable case even if the will specifically provides otherwise.

In view of the foregoing discussion, respondent's additional points deserve but scant consideration. The contention that clause four, providing that "I give all the residue and remainder of my estate to my niece, Ann Hubbard, of Porterville, California," furthers the idea that the testator intended that appellant pay the death taxes on the shares of the legatees is ill conceived indeed. It is entirely clear from the reading of the will as a whole that clause four meant only that after distributing all the bequests enumerated in clauses two and three, the remainder or residue of the estate shall go to appellant.

Respondent's additional argument that different rules are applicable to the federal estate taxes and the California inheritance taxes is also totally unmeritorious. As underscored in the cases, the state inheritance tax is a succession tax on the interest transferred to each beneficiary and in the absence of specific language freeing the bequest from the financial burden, the inheritance tax must be paid out of the beneficiary's share rather than the estate itself (Rev. & Tax Code, §§ 14101, 14121-14123; *Cohn* v. *Cohn* (1942) 20 Cal.2d 65, 68 [123 P.2d 833]; *Estate of Hendricks, supra,* 11 Cal.App.3d at p. 207; *Estate of McLaughlin, supra,* 243 Cal.App.2d at pp. 520-521).

The order is reversed. The cause is remanded for further proceedings consistent with the views expressed herein.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied April 18, 1979, and the petition of the claimant and respondent for a hearing by the Supreme Court was denied May 24, 1979.