[Civ. No. 22975. Fourth Dist., Div. One. Oct. 26, 1981.]

CALIFORNIA FIRST BANK, as Trustee, etc., Plaintiff and Respondent, v.
GENE TOWNSEND et al., Defendants and Appellants;
ROBERT BEATTY et al., Defendants and Respondents.

924

COUNSEL

John M. Wenzel for Defendants and Appellants.

White & Robinson and Irl R. Robinson for Plaintiff and Respondent.

Gray, Cary, Ames & Frye, Shirley L. Kovar, Strauss, Kissane, Davis & Hargrove and Matthew T. Kissane for Defendants and Respondents.

OPINION

STANIFORTH, J.—The sole issue presented on this appeal is whether Gene Townsend, his wife Florita Townsend and their children (Townsend beneficiaries), shall pay their pro rata share of death taxes consisting of federal estate tax and California inheritance tax attributable to property distributable to them. In response to the petition for instructions respecting distribution of trust assets by trustee California First Bank (Bank), the trial court determined that "the 'Dodge Property' does not pass to them [the Townsend beneficiaries] free of estate and inheritance taxes and they must pay their pro rata share thereof." The Townsend beneficiaries appeal this order.

FACTS

In 1970 Louis G. Beatty and Alice M. Beatty executed a living trust designated the "Louis and Alice Beatty Trust" (declaration of trust). The Beattys were named as both trustors and trustees of this trust. During the joint lifetime of the Beattys, the trust was entirely revocable and the trust provided for mandatory distribution of income to the trustors

and for the discretionary invasion of principal for the benefit of either or both trustors.

Upon the death of the first trustor, the trust provided for division of the trust estate into two trust estates, Trust A and Trust B. Trust A was designed to qualify the taxable estate of the first trustor to die for the maximum marital deduction for federal estate tax purposes. Trust B (bypass trust) was designed to hold the remaining property of the deceased trustor and would not be taxed upon the death of the surviving trustor.

Upon the death of both trustors, the declaration of trust provided for five specific bequests of property and the residue of the trust estate was to be divided into shares and divided among families and friends of the trustors. Article VII, paragraph 9 of the declaration of trust provided for payment of death taxes in the following manner: "All inheritance or estate taxes which shall become payable by reason of either Trustor's death and which shall be chargeable to the trust estate for property being added to the trust estate, *shall be paid out of the principal of Trust B to the extent that funds are available in Trust B.*" (Italics added.)

In 1971 the Beattys executed an amendment to the declaration of trust, eliminating the specific gifts of property contained in the declaration of trust with one exception of the specific bequest of the "Dodge Property" to the Townsend beneficiaries. Further, the 1971 amendment revised the gift of the residue of the trust estate to provide for distribution of five equal shares to Alice M. Beatty's side of the family and five equal shares to Louis G. Beatty's family and friends.

Upon the death of Alice M. Beatty, the trust estate—pursuant to the declaration's amendment in 1971—was divided into Trust A (the marital deduction trust) and Trust B (the bypass trust). The federal estate and California inheritance taxes and expenses attributable to the assets allocated to Trust B were approximately $284,000. In obedience to article VII, paragraph 9 of the declaration of trust, these taxes were paid from the assets of Trust B.

Some years later, in 1979, Louis G. Beatty died. In accordance with the estate plan, only the assets held in Trust A are now subject to federal estate and California inheritance taxes; and because of the limited

powers that the survivor trustor, Louis G. Beatty, was given over Trust B, the assets of Trust B are not now subject to death taxes by virtue of the death of Louis G. Beatty. Further, because Louis G. Beatty did not exercise his general power of appointment over assets in Trust A, either during his lifetime or by his will, the assets of Trust A will be distributed in accordance with the terms of Trust B of the declaration of trust as amended in 1971. Distribution is as follows: The "Dodge Property"—held partly in Trust A and partly in Trust B before the death of Louis G. Beatty—will be distributed to the Townsend beneficiaries as a specific bequest. The residue of the trust estate will be divided into shares and distributed equally between Alice M. Beatty's side of the family and Louis G. Beatty's family and friends. This plan of distribution of the trust assets, however, has been delayed pending the determination of the proper method of apportionment among the beneficiaries of the federal estate and California inheritance taxes due by reason of the death of Louis G. Beatty. The Bank's petition for instructions respecting the distribution resulted in the ruling unfavorable to the Townsend beneficiaries here sought to be reversed.

All parties to this dispute agree the probate estate of Louis G. Beatty is chargeable with the federal estate and California inheritance taxes attributable to property held in the probate estate and the Louis and Alice Beatty trust is chargeable with federal estate and California inheritance taxes attributable to assets which were held in trust. The controversy concerns the Townsend beneficiaries' obligation to pay their pro rata share of the federal estate and California inheritance taxes.

DISCUSSION

I

As a general rule, death taxes must be equitably prorated among all the specific and residuary beneficiaries of the trust estate, causing each beneficiary to bear a proportionate share. Probate Code section 970 directs proration as follows: "Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee or other fiduciary has paid an estate tax to the Federal Government under the provisions of any Federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the pro-

visions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, and except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such inter vivos instrument, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues."

Thus the statutory intent to be derived from Probate Code section 970 is of equitable proration. This principle requires each beneficiary of the taxable estate to pay his or her pro rata share of the federal estate tax based on the ratio the beneficiary's taxable interest bears to the total taxable estate. The substantial equivalent of the principle of equitable proration—beneficiary responsibility for California inheritance tax—is to be found in the Revenue and Taxation Code section 14121.

The Townsend beneficiaries concede these general principles but contend that the "Dodge Property" taxes fall within the specific exception to the equitable proration of federal taxes rule. Section 970 provides for proration *"except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund* dealt with in such inter vivos instrument ...."* (Italics added.) In support of this contention, the Townsend beneficiaries point out this irrelevant truism: California inheritance tax, unlike the federal estate tax, is not a tax on the estate left by the decedent but rather a tax imposed upon the particular transfer to a particular transferee, and therefore there is no need to prorate such California inheritance tax.

The Townsend beneficiaries also rely upon the well-settled rule that a written direction in a will or inter vivos trust providing for a bequest or distribution to be made free of inheritance taxes is a valid direction, citing *Estate of McLaughlin* (1966) 243 Cal.App.2d 516, 521 [52 Cal. Rptr. 543], and from this premise argue that paragraph 9 of article VII of the trust is such an express written direction not to prorate federal estate or California inheritance taxes. As previously noted, paragraph 9 provides in part as follows: "All inheritance or estate taxes ... *shall be paid out of the principal of Trust B to the extent that funds are available in Trust B."* (Italics added.)

The Townsend beneficiaries argue that paragraph 1 of article V of the trust[1] and paragraph 2.b.(4)(f) of article III of the trust[2] when read together, demonstrate the trustors' intent to assure the beneficiaries received either the real property designated in those subparagraphs of article III, (a), (b), (d), (e) of paragraph 2.b.(4) or the net proceeds of the same on any sale.

It is argued further that when these clauses are read together with the tax clause of paragraph 9 of article VII of the trust, it is patent that the trustors intended the specific bequests of real property or the net proceeds of any sale of the same pass to the designated beneficiaries free of federal estate taxes and California inheritance taxes to the extent that funds were available to pay the same. It is further argued that the trustee's specific instruction to "keep accurate records of the sale or exchange so that the portion of the trust estate distributed to the beneficiaries of the property ... may be readily ascertained" implies that such record keeping was necessary, not only to ascertain the exact amount of the distribution, but also to separate any of the proceeds from the funds available to pay any estate and inheritance taxes pursuant to the tax clause of paragraph 9 above.

## II

The respective contentions of the parties regarding the construction of the trust document must be examined in the light of these cardinal rules.

---

[1]Paragraph 1 of article V of the declaration of trust provides: "It is the Trustors' desire that the real property specifically devised by the provisions of Article III, Paragraph 2.b.(4)(a) through (e), inclusive, *be held by the Trustee and remain part of the trust estate until distributed to the beneficiaries* under the above cited provisions. If, however, the Trustee deems it advisable to sell or exchange said real property it shall have full power to do so. In such event the *Trustee is instructed to keep accurate records of the sale or exchange so that the portion of the trust estate distributed to beneficiaries of the property sold or exchange pursuant to Article III, Paragraph 2.b.(4)(f) may be readily ascertained.*" (Italics added.)

[2]Paragraph 2.b.(4)(f) of article III of the declaration of trust provides in part: "If the Trustee has sold any of the real property referred to in subparagraphs (a) to (e) above, and the beneficiary or beneficiaries of said real property or properties survive the surviving Trustor, then in lieu of said real property the Trustee *shall distribute to said beneficiary or beneficiaries cash or other assets equal in value to the net proceeds of the sale;* ... For purposes of this Paragraph, *'net proceeds' shall mean the gross proceeds of the sale, reduced by the amount of all encumbrances, commissions, and expenses of sale that are paid by the Trustee and also reduced by the amount of any income taxes arising from the sale.*" (Italics added.)

■ The intent of the trustors is the paramount rule of construction of a trust instrument. (*Estate of Wilson* (1920) 184 Cal. 63 [193 P. 581]; Civ. Code, § 2253.) The intent of the trustors must be ascertained from the whole of the trust instrument, not just from separate parts. (*First Trust & Sav. Bank* v. *Costa* (1948) 83 Cal.App.2d 368 [188 P.2d 778].)

■ The trustors are most explicit as to their overall intent: The purpose of the tax clause in article VII, paragraph 9 of the declaration of trust was to maximize the marital deduction for the federal estate tax purposes upon the death of the first trustor by the process of allocating death taxes to Trust B.[3] It follows that the trustors' intent is thwarted if any portion of the death taxes had been allocated to Trust A, for the marital deduction for federal estate tax purposes would be reduced by any California inheritance taxes or federal estate taxes paid from Trust A.

In furtherance of this expressed intent, the declaration of trust provides for division of the trust estate into two trusts, Trust A and Trust B, upon the death of the first trustor: "[U]pon the death of either one of the Trustors, survived by the other Trustor, and upon receipt of any property upon or by reason of the death of such deceased Trustor, the Trustee shall divide the entire trust estate into two separate trusts, hereinafter called Trust A and Trust B."

The trust declaration then provides that Trust A be funded with the property that would result in obtaining *"the maximum amount allowable as a marital deduction under the applicable federal estate tax law."* (Art. III, par. 1.a.(1); italics added.)

These provisions were drafted to meet the qualifications of the marital deduction including the requirement that the property in Trust A "passes or has passed from the decedent to his surviving spouse." (Int. Rev. Code, § 2056(a).) This "passing" requirement was met in the declaration of trust by giving the surviving spouse a general power of appointment over Trust A. The "passing" requirement to qualify Trust A for the marital deduction was further met by the language of the tax

---

[3]Article III, paragraph 1 of the declaration of trust provides: "It is intended that the trust estate be distributed in such a manner *as will secure the maximum marital deduction and/or community property exclusion under the federal estate tax laws in force at the time of the death of either of the Trustors, and will result in payment of only the minimum estate tax . . . ."* (Italics added.)

clause which allocated death taxes to Trust B. *If the tax clause had allocated death taxes to Trust A, then the passing requirement would not have been met, because not all of the property of Trust A "passed to the surviving spouse." Death taxes to be paid from Trust A would "pass" to the Internal Revenue Service and the State of California treasury.* Any such taxes paid from Trust A would therefore not qualify for the marital deduction. Thus to the extent death taxes had been allocated to Trust A by paragraph 9, the trustor's express intent to obtain the maximum martial deduction permitted by law would have been thwarted.

With respect to the trustors' intent as to the phrase "to the extent funds are available" in paragraph 9, this clause insured that the trustee would pay death taxes from Trust B rather than Trust A to the extent there were available *assets* in Trust B. ■ Where the word "funds" is used, as here, in a legal context, in a lawyer-drawn trust agreement, its meaning "include[s] property of value which may be converted into cash." (*Keene* v. *Keene* (1962) 57 Cal.2d 657, 663 [21 Cal.Rptr. 593, 371 P.2d 329].) The "assets of an estate constitute a fund in the hands of the executor . . . ." (*Estate of Platt* (1942) 21 Cal.2d 343, 348 [131 P.2d 825].) "Funds" are "the proceeds of sales of real and personal estate, or the proceeds of any other assets converted into money." (Black's Law Dict. (4th ed. 1968) p. 802.) That the trustors did not intend to limit the trustee to the use of cash on hand in Trust B for the payment of death taxes upon the death of the first trustor follows from the fact that such an intent would have been an arbitrary restriction on the trustee's ability to use the funds held in Trust B for payment of death taxes. Since the entire estate plan of the trustors was based upon the A/B trust arrangement and their expressed intent to obtain the maximum marital deduction, the trustors would have jeopardized the purpose of their entire estate plan by requiring the trustee to pay death taxes solely from cash which happened to be available at the time of the death of the first trustor. We conclude the source of the payment for death taxes was to be from the assets of Trust B as a whole not just from cash on hand.

Since the purpose of the tax clause was to maximize the marital deduction upon the death of the first trustor which as we have found required application of death taxes to Trust B as a whole and not on a cash residue of Trust B, the tax clause should not be reinterpreted to impute a different intent to the trustors and allocate death taxes only to the cash residue of Trust B upon the death of the second trustor. No-

where do we find the trustors intended the tax clause be given two different meanings. The meaning to be given the term "fund" remained the same whether on the death of the first or second trustor.

■ We conclude from the face of the trust document itself, the trustors intended each specific beneficiary and each residuary beneficiary of Trust B to pay the death taxes attributable to the benefit received by that beneficiary.

## III

Our conclusions as to the trustors' intent derived from construction of the words of the trust instrument itself are conformable to Probate Code section 970, *supra*, and to sound principles found in the case authorities.

In the *Estate of Carley* (1979) 90 Cal.App.3d 582, 586 [153 Cal. Rptr. 528], it was said: "The cases explain that the legal policy and objective sought to be accomplished by the proration statute is the equitable allocation of the burden of the tax among the persons actually affected by that burden [citations]. As the court put it in *Estate of Cushing* (1952) 113 Cal.App.2d 319, 333 . . ., 'There can be no doubt that *the proration statute definitely expresses a policy that the federal estate tax is intended*, in the absence of an expression to the contrary, *to be levied*, for state inheritance tax purposes, *in accordance with the benefit that a person interested receives from the estate . . . .*'"

The plain language of paragraph 9 contains neither expression nor implication contrary to the legislative policy of equitable allocation of the burden of tax pro rata among the persons actually affected by that burden.

If we assume the language of paragraph 9 is ambiguous, then clearly "the very existence of the ambiguity demands proration." (*Estate of Hendricks* (1970) 11 Cal.App.3d 204, 208 [89 Cal.Rptr. 748].)

In *Estate of McLaughlin, supra*, 243 Cal.App.2d 516, 520, it was observed: "The proration statute [§ 970] was designed to prevent the consumption of the residue by taxes where the testator made specific bequests to others. The inequity of such an event is obvious where, as here, the specific legatee or devisee is a stranger and the residue, as is most common, goes to the widow and children [citations]."

The construction placed on paragraph 9 requiring the Townsend beneficiaries to pay their pro rata share of death taxes thus avoids that "inequity" the proration statutes were designed to prevent.

The court in *Estate of Carley, supra*, 90 Cal.App.3d 582, 588, said: "[T]he cases [allocating taxes to the residue] contain either specific language that the death taxes be paid out of the residuary or probate estate and/or other specific and clear indication that the tax burden be not borne by the individual legatees or other beneficiaries."

We find naught in the trust documents which meets the requirement of a clear and unambiguous direction that either allocates death taxes to the residue or expressly relieves the specific beneficiaries from the payment of the death taxes. ■ Nor does the fact of a specific bequest imply that the bequest passes to the specific beneficiary free of death taxes attributable to that bequest. To the contrary, California case law declares the necessity of "specific language" to free a special bequest from the financial burden of the inheritance tax. (See *Estate of Irwin* (1925) 196 Cal. 366, 375 [237 P. 1074]; *Estate of Hendricks, supra*, 11 Cal.App.3d 204, 207; *Estate of Lindner* (1978) 85 Cal.App.3d 219, 222 [149 Cal.Rptr. 331].)

Finally, in *Security First Nat. Bank v. Wellslager* (1948) 88 Cal. App.2d 210 [198 P.2d 700], the direction was that death taxes be paid "out of principal" of the funds to be charged. Such language was not a sufficient direction to allocate death taxes to the residue. The court stated at page 219: "The direction for apportionment required by [Prob. Code, § 970] is an apportionment 'within the fund.' Obviously the statute does not contemplate an apportionment between principal and income but refers to apportionment among the beneficiaries, since in the absence of such a direction the statute provides the taxes shall be apportioned among all the persons interested in the estate."

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.