50 Cal.2d 345 (1958)
Estate of HERBERT EDWARD LAW, Deceased. WELLS FARGO BANK (a Corporation), as Executor, etc., Appellant,
v.
ROBERT C. KIRKWOOD, as State Controller, etc., Respondent.
S. F. No. 19672. 
Supreme Court of California. In Bank. 
May 23, 1958.
 Pillsbury, Madison & Sutro, Harold I. Boucher, W. J. McFarland, Claude H. Hogan, Jr., Willis D. Hannawalt and Arthur L. Content for Appellant.
 Robert C. Harris, Donald B. Falconer, Heller, Ehrman, White & McAuliffe, Jannin & Morgan and Roos, Jennings & Haid as Amici Curiae on behalf of Appellant.
 James W. Hickey, Chief Inheritance Tax Attorney, Joseph D. Lear and Charles J. Barry, Assistant Chief Inheritance Tax Attorneys, and Milton D. Harris, Assistant Inheritance Tax Attorney, for Respondent.
 TRAYNOR, J.
 The executor of the estate of Herbert E. Law appeals from the orders of the trial court overruling its objections and fixing the marital exemption under section 13805 of the Revenue and Taxation Code at the amount computed by the Controller.
 Decedent died testate on June 18, 1952. He left over half his estate to his wife, provided a legacy for an adopted daughter, *349 and left the residue in trust for other beneficiaries. [1] The will provided that inheritance and estate taxes should be paid "out of my residuary estate in the same manner as an expense of administration" and should not be apportioned, prorated, or charged against any of the devisees, legatees, or beneficiaries. This provision precluded proration of the federal estate tax under sections 970 to 977 of the Probate Code. The market value of decedent's estate, which consisted solely of separate property, was $2,961,436.71. [2] The computations of the marital exemption contended for by the parties are as follows:
 Tabular Material Omitted
 The difference in the computations arises from the fact that the Controller subtracts all allowable deductions, including the federal estate tax ($418,901.13), from the market value of the entire estate and takes half the remainder as the marital exemption, whereas the executor subtracts only deductions other than the federal estate tax from the market value of the entire estate before taking half as the marital exemption. The executor's computation increases the marital exemption as computed by the Controller by half the federal estate tax. The Legislature has the power to prescribe either computation. (Stebbins v. Riley, 268 U.S. 137, 144-145 [45 S.Ct. 424, 69 L.Ed. 884, 44 A.L.R. 1454]; Estate of Watkinson, 191 Cal. 591, 596 [217 P. 1073].) The question is: What computation has it prescribed?
 [3] The answer depends upon the proper construction to be given section 13805 of the Revenue and Taxation Code. The pertinent part of that section provides:
 "Property equal in amount to the clear market value of one-half of the decedent's separate property shall, if transferred *350 to the spouse of the deceased, be exempt from the tax imposed by this part. ..."
 The marital exemption under this section, like the federal marital deduction (26 U.S.C.A., 2056), is limited to the lesser of two amounts, the amount "transferred to the spouse" and the amount of the "clear market value of one-half of the decedent's separate property." The issue here concerns the second limitation, for the amount thereof under either the executor's or the controller's computation is less than the amount transferred to the spouse.
 [4] The controlling words in this limitation, "clear market value," are governed by the definitions in sections 13311 and 13312, for section 13302 provides: "Except where the context otherwise requires, the definitions given in this chapter govern the construction of this part." "This part" consists of part 8 entitled "Inheritance Tax" and includes sections 13301 through 14901. Section 13311 provides: " 'Market value,' in respect to property included in any transfer, means the market value of the property as of the date of the transferor's death, whether or not the transfer was made during the life time of the transferor." Section 13312 provides: " 'Clear market value' means the market value of any property included in any transfer, less any deductions allowable by this part." It is obvious at the outset that had the Legislature intended that no deductions should be subtracted, it would simply have used the words "market value" instead of "clear market value." It remains therefore to determine what the allowable deductions are and from what they should be deducted.
 The allowable deductions are set forth in sections 13981 to 13990 and include such items as expenses of administration, debts, expenses of funeral and last illness, attorney's fees, and federal estate tax ( 13989). Since the federal estate tax is an allowable deduction, the Controller contends that in conformity with section 13312 it must be subtracted from the market value of decedent's separate property to ascertain the clear market value thereof and that half the amount so ascertained is "the clear market value of one-half of the decedent's separate property." [fn. 1] *351
 The executor contends that the Controller's computation involves an unauthorized transposition of the words of the statute from "the clear market value of one-half of the decedent's separate property" to "one-half of the clear market value of the decedent's separate property." [fn. 2] The executor's theory apparently is that the section as worded requires taking half the market value of decedent's separate property before subtracting the allowable deductions therefrom to arrive at the clear market value thereof under section 13312. The executor then contends, citing 18 Administrative Code, sections 837, 848, and 849, that clear market value has meaning only with respect to particular distributees and that deductions are allowable, not to the estate of a decedent, but only to particular distributees; that since the only beneficiary concerned with the marital exemption is the wife, the allowable deductions to be subtracted in arriving at the marital exemption must be the wife's allowable deductions; and that since the wife in this case is not charged with payment of any federal estate tax because the decedent directed that it should be paid out of the residue and none of the residue went to the wife, she is not allowed any deduction therefor ( 13981) and accordingly none of the federal estate tax should be subtracted from half the market value of decedent's separate property in arriving at the marital exemption.
 [5] Section 13805 cannot reasonably be construed to support the executor's contention. In the first place it is immaterial whether the allowable deductions are taken from the total market value of decedent's separate property or from half the market value thereof so long as half the total deductions (the pro rata share thereof) are subtracted from each half of the market value of decedent's separate property to arrive at the clear market value of each half. To arrive at the clear market value of each half there is no more reason to subtract all the deductions from any one half than there is to subtract all of them from the other half. The two halves of any figure are necessarily equal. Therefore, since the clear *352 market value of either half of the decedent's separate property cannot be greater or less than the clear market value of the other half, the allowable deductions must be prorated equally to each half.
 [6] In the second place, section 13805 cannot reasonably be construed as providing that the allowable deductions to be subtracted in arriving at the marital exemption must be the surviving spouse's allowable deductions. That section reads, "Property equal in amount to the clear market value of one-half of the decedent's separate property shall, if transferred to the spouse of the deceased, be exempt from the tax imposed by this part. ..." The words "equal in amount" clearly show that the relationship between the "Property" that "shall ... be exempt" and "the clear market value of one-half of the decedent's separate property" is purely quantitative and that it is immaterial whether the property exempted is community property or separate property or whether the separate property or any part thereof does or does not pass to the surviving spouse. The Controller parses the pertinent sentence in section 13805 to demonstrate the validity of this conclusion: The subject of the sentence is "Property." Stripped of its modifying clauses it reads, "Property ... shall ... be exempt from the tax imposed by this part." The first clause, "equal in amount to the clear market value of one-half of the decedent's separate property," modifies "Property" solely as to amount. The words, "equal in amount," establish a purely quantitative limitation. The second clause, "if transferred to the spouse of the deceased," is qualitative and modifies the subject, "Property," and not the object of the first clause, "decedent's separate property." Under any interpretation permissible by simple rules of grammar, the exemption extends to any type of property passing to the spouse, the amount to be limited to the clear market value of one-half of the decedent's separate property.
 [7] Since the second limitation on the marital exemption is a purely quantitative one and it is immaterial whether or not the surviving spouse receives separate property, it necessarily follows that it is likewise immaterial what deductions may be allowed with respect to property the surviving spouse actually receives. There is no more reason for assuming that the deductions to be taken in determining the clear market value of one- half of the decedent's separate property are the deductions allowable to the surviving spouse than that they *353 are the deductions allowable to other distributees. [fn. 3] The underlying premise of the executor's contention, stated in various ways in his briefs and the briefs of amici curiae, is that the second limitation on the marital exemption is measured by the clear market value of one-half of the decedent's separate property passing to the wife. If this premise were valid it would compel the disallowance of the marital exemption in many cases where none of the decedent's separate property passes to the surviving spouse. Thus, if the wife is to receive the decedent's share of the community property, there would be no marital exemption even though there was separate property in the estate passing to other distributees. Such a result would increase the tax burden of many surviving spouses in plain disregard of the statutory purpose to grant the marital exemption regardless of what type of property actually passes to the surviving spouse.
 If, as the executor contends, the phrase "allowable deductions" has meaning only with respect to specific distributees so far as the federal estate tax deduction is concerned, it would have the same meaning so far as other deductions, such as administration expenses, are concerned. (Compare the wording of sections 13983, 13986, 13987, and 13988 with that of section 13989.) Thus, in the present case, since all expenses were paid from the residue, no deduction therefor would be allowed to the wife and none would be subtracted from the market value of half of decedent's separate property. The executor, however, does not contend that allowable deductions other than the federal estate tax should not be deducted in computing the marital exemption; indeed, it includes these other deductions in its own computation. *354
 [8] In the third place the executor's contention that the words "clear market value" have meaning only with respect to specific distributees is without merit. Section 13312, as noted previously, states: " 'Clear market value' means the market value of any property included in any transfer, less any deductions allowable by this part." Note that this definition uses the phrase "any property included in any transfer." Transfer is defined in section 13304: " 'Transfer' includes the passage of any property, or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise." The sections that provide for deductions ( 13981-13990) state that the particular expenses "are deductible from the appraised value of property included in any transfer subject to this part made by the decedent." It is apparent that none of these sections support the theory that "clear market value" has meaning only with respect to specific distributees. [9] Nor do the sections of the Administrative Code (18 Cal. Admin. Code, 837, 848, 849), cited by the executor, support such a theory. They merely provide that the inheritance tax is ordinarily measured by the clear market value of the distributive share of a decedent's estate to which a particular transferee is entitled and provide for such computation. In each section the word "ordinarily" is used. Under these sections the clear market value of the entire estate would be determined and the tax computed with respect to each distributee's share of the net estate where the testator directed that all expenses, including federal estate tax, were to be paid from the estate and not prorated or charged to any of the beneficiaries. In such a case, no deduction would be allowed to each distributee since the deductions would be allowed in determining the net estate (clear market value of the estate). In fact, that result occurred in the present case, for the federal estate tax was paid from the residue and, in accordance with the decedent's will, was not charged or prorated against the individual beneficiaries, and accordingly, they were not allowed a deduction therefor. Thus, the clear market value of the property in the residue was determined and the state tax computed on each beneficiary's share of the net residue. If the executor's theory that deductions are allowable only with respect to specific distributees were correct, the Controller improperly allowed a deduction for federal estate tax against the market value of property in the residue, for there are 18 beneficiaries of that residue under the will. No deduction can be allowed to *355 each beneficiary, for to do so would require that the expense be proratably charged to each beneficiary and a deduction allowed to each contrary to the terms of the will. The statutes do not require such a result and both reason and justice dictate otherwise. [10] Thus, when a testator directs that an expense is not to be charged to the individual beneficiaries but is to be charged against a part of the estate, the deduction for that expense should be allowed against that part and the tax on the beneficiaries of that part should simply be computed on their net share thereof. [11] The Legislature's use of the phrase "clear market value" in section 13805 plainly demonstrates that that phrase has meaning with respect to a certain part of the estate for it requires that the clear market value be taken of one-half of decedent's separate property, which, as demonstrated previously, need not pass to a single distributee, i.e. the wife, but may actually pass to various distributees.
 The executor contends that its computation is supported by Estate of Cushing, 113 Cal.App.2d 319, 332-334 [248 P.2d 482]. That case held that in computing the "one-half of the community property which belongs and goes to the surviving wife, pursuant to Section 201 of the Probate Code" free of inheritance tax under section 13551 of the Revenue and Taxation Code, the federal estate tax should not be subtracted with respect to post-1927 community property, i.e., community property acquired after the enactment of section 161a of the Civil Code. The court in that case also held, however, that as to pre-1927 community property, the allowable deduction for federal estate tax should be subtracted in computing the wife's one-half that is free from inheritance tax, citing Estate of Atwell, 85 Cal.App.2d 454, 457-458 [193 P.2d 519], which in turn cited and relied upon Estate of Coffee, 19 Cal.2d 248, 252-253 [120 P.2d 661].
 In support of its contention the executor urges that part of the basis for the holding in Estate of Cushing is that since there was no federal estate tax on post-1927 community property, such property did not contribute to the federal tax, and, therefore, the federal estate tax was not subtracted in determining the wife's share free of inheritance tax. Because of the federal marital deduction, the executor concludes that the same is true of the separate property in this case. The contention is without merit, for the federal marital deduction was allowed with respect to the pre-1927 community property in the Cushing case just as it was allowed with respect to the *356 separate property in this case. The executor does not deny that for federal estate tax purposes, pre-1927 community property is treated in the same manner as separate property and that a federal marital deduction is allowed with respect thereto.
 The basis of the Cushing decision is stated on page 334 (113 Cal.App.2d) as follows:
 "It follows from what has been said that the California statutes indicate that the widow's one-half of the post-1927 community property, since it is not part of the 'gross estate' of the husband and is not liable for the federal estate tax, should not be charged, directly or indirectly, with any portion of the federal estate tax. This reasoning does not apply to pre-1927 community property, and, as to it, Estate of Atwell is controlling." That reasoning does not apply to the decedent's separate property just as it does not apply to pre-1927 community property, for both are treated alike for federal estate tax purposes and both are part of the decedent's "gross estate." Consequently, Estate of Cushing supports the Controller's and not the executor's contentions.
 The executor contends that section 13805 is modeled after the federal marital deduction and that to subtract federal taxes in computing the state marital exemption is to reach a result contrary to that reached under the federal statute. (26 U.S.C.A., 2056.) The state statute provides for the subtraction of allowable deductions by the use of the words "clear market value" just as the federal statute provides for their subtraction by the use of the words "adjusted gross estate," i.e., the gross estate less deductions allowed by sections 2053 and 2054. (26 U.S.C.A., 2056.) The difference is that the federal statute does not allow any deduction for federal estate tax or for state inheritance tax, [fn. 4] whereas the state does allow a deduction for federal estate tax. If the federal statutes (26 U.S.C.A., 2053-2054) provided for a deduction of either federal estate tax or state inheritance tax, such deductions would be made in determining the "adjusted gross estate" and would therefore enter into the computation of the federal marital deduction. [12] Since the state statute does provide for the deduction of the federal estate tax in determining "clear market value," it must therefore enter into the computation of the state marital exemption, for that exemption is governed by the controlling words "clear market *357 value" whose meaning is made to depend on allowable deductions. [13] Moreover, the state provisions were not intended to have the same consequences as the federal provisions, for the state provides for a marital exemption rather than a deduction. (Compare also the terminable interest rule in 26 U.S.C.A., 2056 with Rev. & Tax. Code, 13805.) The difference is that the federal deduction comes off the top of the tax brackets (26 U.S.C.A., 2001, 2051), whereas the state marital exemption comes off the bottom, i.e., the tax is computed on the remainder of the property at the same rates that would have been applicable had the exemption not been allowed. (Rev. & Tax. Code, 13403; cf. 13989 as amended in 1957.)
 [14] The executor contends that the Legislature intended substantial equality in the tax treatment of separate property and post-1927 community property and that such equality requires the exclusion of the federal estate tax from the allowable deductions in computing the marital exemption. The extent of such equality, however, must be determined by the statute. It is clear that full equality was not intended, for as mentioned above, section 13805 provides for an exemption rather than an exclusion and section 13312 compels the consideration of federal estate tax as an allowable deduction.
 [15] The executor contends that the Controller's interpretation of section 13805 conflicts with the policy expressed in the proration provisions. (Prob. Code, 970-977.) The proration provisions provide, when applicable, that the federal estate tax shall be equitably prorated against those beneficiaries whose shares contributed to the creation of such tax. Section 13805, however, is concerned with the computation of the marital exemption for state inheritance tax and is not concerned with which shares shall be charged with the payment of the federal estate tax. Thus, when the proration provisions apply, only those beneficiaries whose shares contributed to the creation of the federal estate tax will be charged with the payment thereof. The proration provisions do not establish a policy that there shall be no state inheritance tax on any property qualifying for the federal marital deduction. This conclusion is obvious not only from the nature of those provisions but from the fact that the proration provisions were enacted (1943) five years before the federal marital deduction provision was enacted (1948) and seven years before the state marital exemption provision was enacted (1950). *358
 Finally, amici curiae contend that the Controller's interpretation of section 13805 is absurd because the identity of other legatees may affect the amount of the marital exemption. Examples are set forth in their brief to demonstrate this alleged absurdity by showing that when there are bequests to charities, the federal estate tax will be lower and the second limitation on the marital exemption will be higher. There is nothing absurd about this result, for it necessarily follows from the deduction allowed for the federal estate tax that the higher that tax is, the lower will be the net taxable estate subject to the state inheritance tax. Thus, if the estate consisted of separate property valued at $15,000,000 and the only charge against it is a federal estate tax of $6,000,000, the net taxable estate subject to the state inheritance tax would be only $9,000,000, because a deduction is allowed for the federal estate tax just as deductions are allowed for administration expenses. Thus anything that reduces or augments the federal estate tax, whether it be the allowance or disallowance of exemptions, exclusions, charitable or other deductions, will reduce or augment the clear market value of the decedent's separate property. Moreover, the same result occurs with respect to pre-1927 community property under Estate of Atwell and Estate of Cushing, and would occur as well under the executor's theory when the wife's share is charged with the payment of all or a percentage of the federal estate tax.
 The orders are affirmed.
 Gibson, C.J., Shenk, J., Carter, J., and Spence, J., concurred.
 SCHAUER, J.,
 Dissenting.
 The statute which, by its express terms, should govern this case is section 13805 of the Revenue and Taxation Code. That section declares that "Property equal in amount to the clear market value of one-half of the decedent's separate property shall, if transferred to the spouse of the deceased, be exempt from the tax imposed by this part ..." (Italics added.) I find nothing unclear in the language chosen by the Legislature.
 The computations of the executor are obedient to the statute. But the Controller, with the approval of a majority of this court, in effect amends the statute by changing the base of the exemption from the "clear market value of one-half of the decedent's separate property" to one-half of the value of such portion of the decedent's separate property as may *359 remain after the federal estate tax shall have been deducted from the value of the estate.
 This act, if regarded as legislative, obviously is in derogation of section 1 of article III of the California Constitution. If justification is sought on the theory that it is "judicial construction" it is equally indefensible, for the construction brings a result contrary to the interest of the taxpayer in violation of the oft reiterated principle that tax statutes are to be strictly construed in favor of the taxpayer and against the state. (County of Los Angeles v. Jones (1939), 13 Cal.2d 554, 561 [2] [90 P.2d 802], and authorities there cited; Whitmore v. Brown (1929), 207 Cal. 473, 483 [279 P. 447].)
 The suggestion of the majority that the executor's theory could work adversely to the taxpayer in a totally different situation is not persuasive; it ignores the specificity of the situation which is before the court and assumes that in the different situation as well as in this one the court will construe the applicable statutes in favor of the state and against the taxpayer. I would follow the contrary rule and give to the taxpayer the benefit of the doubt in any case wherein the legislative language was uncertain enough to admit of construction.
 It follows that the order from which the executor appeals should be reversed.
 McComb, J., concurred.
NOTES
[fn. 1] 1. If both community property and separate property were included in the estate, only a pro rata share of allowable deductions would be subtracted by the Controller from the separate property to obtain the "clear market value" thereof. Since the entire estate herein consists of separate property, no prorating of allowable deductions between separate and community property is called for.
[fn. 2] 2. As stated in the brief of amici curiae, the executor's case stands or falls on the proposition that "the clear market value of one-half of the decedent's separate property" means something different from "one-half of the clear market value of the decedent's separate property." The Controller contends that the result would be the same in either case; that "the clear market value of one-half of the decedent's separate property" means the same thing as "one-half of the clear market value of the decedent's separate property."
[fn. 3] 3. Assume that the decedent's taxable estate consists of community property (decedent's share) of a market value of $200,000 and separate property of a market value of $100,000; that the allowable deductions, including federal estate tax, total $60,000; that the will provides that the community property goes to decedent's wife, and one-half the separate property goes to son John and the other half to daughter Mary; and that the will also provides that two-thirds of the expenses and death taxes are to be paid from the wife's share and one-sixth of such expenses is to be paid from each half of the separate property. Thus $40,000 will be deductible by the wife and $10,000 will be deductible by each of the children. It is readily apparent that neither the wife's share ($200,000 of community property) nor the allowable deductions with respect thereto ($40,000) bear any logical relationship to "the clear market value of one-half of the decedent's separate property." It would be more reasonable to assume that the "clear market value of one- half of the decedent's separate property" was the half going to son John or to daughter Mary less his or her allowable deductions.
[fn. 4] 4. A limited credit is allowed, however, for state inheritance tax under 26 U.S.C.A., 2011.