ESTATE OF MIRIAM G. McKAY, DECEASED, VICTOR A. HERMANN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKay v. Commissioner
Docket No. 13929-92
United States Tax Court
T.C. Memo 1994-362; 1994 Tax Ct. Memo LEXIS 371; 68 T.C.M. (CCH) 279; August 1, 1994, Filed *371 Decision will be entered for respondent. For petitioner: Robert H. Showen. For respondent: Paul J. Krug. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined a deficiency of $ 219,381 in petitioner's Federal estate tax. The only issue is whether the deduction for charitable transfers claimed by the estate of Miriam G. McKay (estate) under section 2055(a)[1] must be reduced pursuant to section 2055(c) to reflect a share of the estate's Federal and California estate tax liabilities. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time the petition was filed, Victor A. Hermann, the executor of the estate (Mr. Hermann or the executor), resided in Hillsborough, California. Miriam G. McKay (decedent), a resident of San Mateo County, *372 California, died testate on November 2, 1989. The principal beneficiary of decedent's estate was Elizabeth Neish (Ms. Neish), who had been decedent's friend for many years. On December 3, 1985, decedent executed a "Last Will and Testament" (will). In March 1988, decedent executed a "First Codicil to the Will of Miriam Gardner McKay" (first codicil). In January 1989, decedent executed a "Second Codicil to the Will of Miriam Gardner McKay" (second codicil). The will and the first and second codicils were drafted for decedent by Robert H. Showen (Mr. Showen), who is also counsel for petitioner in this case. Under Article Two of the will, decedent bequeathed to each of six named beneficiaries, including Ms. Neish, $ 3,000. [2] Under Article Three of the will, decedent bequeathed and devised, respectively, to Ms. Neish (provided she survived decedent by 30 days) her personal effects and her condominium in San Mateo, California. Under Article Five of the will, decedent bequeathed 25 percent of the residue of her estate to Ms. Neish (provided she survived decedent by 30 days) and 15 percent of the residue of her estate to each of five named charitable organizations. (Hereinafter, *373 the residue of decedent's estate will be referred to as the residuary estate, and the six beneficiaries of the residuary estate will be referred to as the residuary beneficiaries.) In Article Seven of the will, decedent made the following provision with respect to the payment of inheritance, estate, or other death taxes: I direct that all inheritance, estate or other death taxes, that may by reason of my death be attributable to my probate estate or any portion of it, including any property received by any person as a *374 family allowance or homestead, shall be paid out of the residue of my estate disposed of by ARTICLE FIVE of this will, without adjustment among the residuary beneficiaries, and shall not be charged against or collected from any beneficiary of my probate estate.
Prior to her death, decedent had discussed in general terms with Ms. Neish and Mr. Hermann her intention to make "tax-free gifts" to charities or gifts to "tax-free" charitable organizations. However, decedent did not discuss with either of them the allocation of estate, inheritance, or other death taxes among the beneficiaries of her estate. Neither Ms. Neish nor Mr. Hermann knew the terms of decedent's will prior to her death or the amount decedent intended to give to charity. On January 22, 1990, the will and first and second codicils were probated, and Mr. Hermann was authorized to act as executor of the estate. On October 18, 1990, the executor filed with the Superior Court of California in and for the County of San Mateo (Superior Court) a first and final accounting and petition for final distribution of the estate (petition for final distribution). The executor requested, inter alia, in the petition for final *375 distribution that Federal and California estate taxes paid by the executor be allocated and charged to Ms. Neish, the noncharitable residuary beneficiary of the estate. Ms. Neish had consented to that allocation of those taxes in a telephone conversation with Mr. Showen that occurred in July 1990. On October 31, 1990, the Superior Court issued an order and judgment of final distribution (judgment) with respect to the petition for final distribution that provided, inter alia, that the Federal and California estate taxes paid by the executor should be charged to Ms. Neish, the noncharitable residuary beneficiary of the estate. Pursuant to that judgment, Ms. Neish's share of the residuary estate was $ 901,523.84, and the share of each of the remaining five charitable residuary beneficiaries was $ 930,266.12. The charitable residuary bequests were not reduced by the Federal and California estate taxes paid by the executor. The distribution as ordered in that judgment was not contested in that no formal objections were filed by the beneficiaries. In its Federal estate tax return (return), the estate claimed a deduction under section 2055(a) of $ 849,472 [3] for the amount paid to *376 each of the charitable residuary beneficiaries. The estate claimed a total deduction under that section of $ 4,250,360 for all charitable transfers made under the will that consisted of the five charitable residuary bequests and a $ 3,000 bequest to an educational institution. Respondent determined in the notice of deficiency that the charitable deduction claimed in the return must be decreased to reflect the allocation to the charitable residuary beneficiaries of their proportionate share of Federal and California estate taxes. OPINION The estate bears the burden of establishing error in respondent's determination. [4] Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir. 1975), *377 affg. T.C. Memo. 1972-133. The dispute in this case involves section 2055(c). That section provides that the deduction otherwise allowable under section 2055(a) for charitable transfers is to be reduced by the amount of estate and similar *378 taxes payable out of those transfers. The question whether such taxes are payable out of a charitable transfer is one of State law. See Riggs v. Del Drago, 317 U.S. 95, 97-99 (1942); Estate of Leach v. Commissioner, 82 T.C. 952, 963 (1984), affd. without published opinion 782 F.2d 179 (11th Cir. 1986); cf. Robinson v. United States, 518 F.2d 1105, 1107 (9th Cir. 1975). In the instant case, California law governs that question. Cf. Estate of Heim v. Commissioner, 914 F.2d 1322, 1325 (9th Cir. 1990), affg. T.C. Memo. 1988-433. We must apply California law as announced by the Supreme Court of California, and, if there is no decision by that highest court, we must apply what we find to be the law of California, giving proper regard to the decisions of other courts of the State. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967). The California proration statute provides in pertinent part that, except as provided therein, any estate tax is to be equitably prorated among *379 the persons interested in the estate (proration). Cal. Prob. Code App. sec. 20110(a) (West 1991). That statute requires the burden of any estate tax to be borne by each beneficiary to the extent the beneficiary's share has contributed to the tax. E.g., In re Armstrong's Estate, 366 P.2d 490, 493 (Cal. 1961); Estate of Silveira, 197 Cal. Rptr. 121, 123 (Ct. App. 1983); In re Setrakian's Estate, 338 P.2d 247, 251-252 (Cal. Dist. Ct. App. 1959). [5] Under the California proration statute, charitable transfers do not bear the burden of estate taxes, since such transfers do not contribute to such taxes. See Security-First Natl. Bank v. Wellslager, 198 P.2d 700, 702-703 (Cal. Dist. Ct. App. 1948). *380 There are exceptions to proration that are prescribed in the California proration statute. That statute does not apply, inter alia, to the extent the decedent in a written inter vivos or testamentary instrument disposing of property specifically directs "that the property be applied to the satisfaction of an estate tax or that an estate tax be prorated to the property in the manner provided in the instrument." Cal. Prob. Code App. sec. 20110(b)(1). Because proration is the general rule in California, the intent that it not apply must be clearly and unambiguously expressed; ambiguities are resolved in favor of proration. See In re Armstrong's Estate, supra at 494-495; Estate of Hendricks, 89 Cal. Rptr. 748, 749 (Ct. App. 1970). No specific language is required to elect out of the California proration statute, provided that the language used clearly expresses the intention that it not apply. See Estate of Lindner, 149 Cal. Rptr. 331, 334 (Ct. App. 1978). We must decide whether decedent specifically directed in her will that the burden of estate taxes be allocated in a manner other *381 than that provided by the California proration statute. Before turning to the will itself, we shall address two matters that the estate urges us to consider in deciding whether to adopt its construction of the will, viz., the judgment of the Superior Court and extrinsic evidence of decedent's intent to make gifts to charity. With respect to the judgment of the Superior Court, the estate acknowledges that the judgment has no binding effect in the instant case and apparently concedes that there is no evidence that the Superior Court, in approving the allocation of taxes requested by the executor in the petition for final distribution, in fact considered whether the proration statute applied. The estate also acknowledges that the burden of estate taxes attributable to the bequests of $ 3,000 to the three individuals other than Ms. Neish [6] *382 should have been borne by the entire residuary estate under Article Seven of the will. [7] Thus, the estate apparently concedes that at least in that respect the Superior Court misapplied California law in issuing the judgment. Nonetheless, the estate contends that this Court should give the Superior Court judgment consideration in deciding whether the California proration statute applies to the residuary charitable transfers made under decedent's will. We assume that the estate's position is that the judgment should be accorded "proper regard" under Commissioner v. Estate of Bosch, supra.The parties stipulated that the distribution of the estate as ordered by the Superior Court was not contested in that no *383 formal objections were filed. Ms. Neish testified that she did not consult her attorney concerning the estate and was very grateful for decedent's generosity to her in the will, suggesting that she would not necessarily have objected to an erroneous construction of Article Seven of the will by the Superior Court. [8] Under the circumstances disclosed in the record, we find that the proceeding before the Superior Court was essentially ex parte and was not a bona fide adversary proceeding. Consequently, we will not rely on the judgment in determining the applicability of the California proration statute to the residuary charitable transfers provided by decedent's will. See Estate of Rowan v. Commissioner, 54 T.C. 633, 638-639 (1970). With respect to the extrinsic evidence of decedent's intent regarding the charitable transfers in question that was offered by the estate, that evidence consists of the *384 testimony of Ms. Neish and Mr. Hermann concerning decedent's statements of her intent to give "tax-free gifts" to charities or gifts to "tax-free" charitable organizations. Respondent objected to that testimony on the grounds of relevance, contending that the Court must determine decedent's intent without going beyond the four corners of the will. We conditionally admitted the testimony of Ms. Neish and Mr. Hermann subject to our ruling on its relevance. Under California law, it is now well settled * * * that a will must be examined "in the light of the circumstances surrounding its execution so as to ascertain what the * * * [testator] meant by the words used. Only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous." In re Estate of Russell, 69 Cal. 2d 200, 444 P.2d 353, 359, 70 Cal. Rptr. 561, 567 (1968) * * *. [Estate of Harmon v. Commissioner, 84 T.C. 329, 334-335 (1985); citations omitted.]
Thus, we shall consider extrinsic evidence concerning the circumstances surrounding execution of decedent's will in order to determine *385 what decedent meant by the language she used in Article Seven of the will. In re Estate of Russell, 444 P.2d 353, 359 (Cal. 1968). If, in light of that evidence, the language of Article Seven of the will is not reasonably susceptible of two or more meanings, no uncertainty arises on the face of the will. Id. at 361-362. In that event, this Court may not rely on extrinsic evidence to show an intention different from that expressed in the will. See id.
Ms. Neish and Mr. Hermann testified about statements decedent made to them concerning her intent to provide for charities in her will. Both witnesses testified that they did not know the terms of the will prior to decedent's death or the amount decedent desired to give to charity. They also indicated that decedent never discussed with them the concepts of proration or allocation of estate or death taxes. Mr. Hermann testified that he did not believe that decedent would have understood those concepts. We found the testimony of Ms. Neish and Mr. Hermann regarding decedent's intent to provide for charities in her will to be general, vague, and confusing. We conclude *386 that that testimony is not sufficient to show that the language of Article Seven of the will is reasonably susceptible of two or more meanings intended by decedent. Accordingly, we will not rely on that testimony to establish an intention different from the one expressed in the will. See id. at 361-362. We therefore must determine decedent's intent based on the language of Article Seven of the will. In construing the will, we are guided by the following principles of interpretation prescribed by California law. The intention of the testator as expressed in the will controls the legal effect of the dispositions made in the will. Cal. Prob. Code App. sec. 6140(a) (West 1991). The words of a will are to receive an interpretation that gives every expression some effect, rather than one that renders any of the expressions inoperative. Cal. Prob. Code App. sec. 6160 (West 1991). All parts of a will are to be construed in relation to each other and in such a way so as, if possible, to form a consistent whole. Cal. Prob. Code App. sec. 6161 (West 1991). The words of a will are to be given their ordinary and grammatical meaning unless the intent to use them in another sense *387 is clear and their intended meaning can be ascertained. Cal. Prob. Code App. sec. 6162 (West 1991). Technical words in a will are considered to be used in their technical sense unless, inter alia, the context clearly indicates a contrary intention. Id.
Bearing in mind the foregoing rules of construction under California law, we turn to the following provisions of Article Seven of the will governing the allocation of the burden of estate, inheritance, or other death taxes (sometimes collectively referred to as estate taxes): I direct that all inheritance, estate or other death taxes, that may by reason of my death be attributable to my probate estate or any portion of it * * * shall be paid out of the residue of my estate disposed of by ARTICLE FIVE of this will, without adjustment among the residuary beneficiaries, and shall not be charged against or collected from any beneficiary of my probate estate. [9]
*388 The estate apparently concedes that Article Seven of the will expresses decedent's intent that the proration statute not apply to the three $ 3,000 nonresiduary transfers to persons other than Ms. Neish. Thus, the estate seems to acknowledge that those nonresiduary beneficiaries are not to bear the burden of the estate taxes attributable to such transfers and that the burden of such taxes is to be borne by the residuary estate and, consequently, by all the residuary beneficiaries. Nonetheless, the estate argues that the proration statute does apply to the estate taxes attributable to the nonresiduary and residuary transfers to Ms. Neish, with the result that those taxes would be borne by her share of the residuary estate, and not by the charitable residuary beneficiaries. In support of this argument, the estate contends generally that the directions in Article Seven of the will do not, as is required by California law in order to opt out of proration, clearly and unambiguously express an intention by decedent that the proration statute not apply to any estate taxes in respect of those transfers to Ms. Neish. The estate also advances specific contentions regarding the directions *389 in Article Seven of the will that it believes support its position. Thus, the estate contends that a simple direction in a will to pay estate taxes from the residue of an estate is not sufficient to express the testator's intention to elect out of proration with respect to that residue. Such a contention ignores both Article Seven of the will and certain California authorities. Article Seven of the will contains more than only a direction that estate taxes be paid out of the residuary estate. It contains other directions that specify in detail the manner in which the impact of those taxes is to be borne; namely, those taxes are to be paid out of the residuary estate without adjustment among the residuary beneficiaries and without charging them against or collecting them from any beneficiary of decedent's probate estate. Moreover, where, as is the case here, a testatrix' intent concerning the composition of the residue of her estate is not ambiguous, a direction that estate, inheritance, or other death taxes be paid from the residue of that testatrix' estate may constitute a sufficient expression of intent under California law to render the proration statute inapplicable. See *390 In re Estate of Dark, 113 Cal. Rptr. 727, 727-728 (Ct. App. 1974); In re Wilson's Estate, 315 P.2d 451, 452 (Cal. Dist. Ct. App. 1957). [10]
The estate further contends that the direction in Article Seven of the will that any estate, inheritance, or other death taxes payable by reason of decedent's death not be charged against or collected from any beneficiary of her probate estate is ineffective to opt out of the proration statute. In support of this contention, the estate relies on Estate of Cochran, 106 Cal. Rptr. 700 (Ct. App. 1973). We find Estate of Cochran to be distinguishable. That case concerned the application of the proration statute where (1) *391 the will provided that all death taxes were to be paid "out of the residue" of the estate and were not chargeable against any beneficiary (with one specifically stated exception), (2) a question arose as to what constituted the "residue" of the testatrix' estate, and (3) the portion of the estate determined to be the "residue" was insufficient to pay all death taxes. Under those circumstances, in particular that the "residue" of the estate was insufficient to permit compliance with the testatrix' direction that (with one exception) no beneficiary be charged with death taxes, that direction was held to have no effect. Id. at 704. In contrast to the Estate of Cochran case, in the instant case, there is no question as to what constitutes the residuary estate or as to whether it is adequate to pay all estate taxes attributable to decedent's death. Consequently, Estate of Cochran is inapposite, and the estate's reliance on it is misplaced. The estate also contends that the direction in Article Seven of decedent's will that all estate, inheritance, or other death taxes be paid "without adjustment among the residuary beneficiaries" means that the *392 burden of those taxes as allocated by the proration statute is not to be changed or adjusted among the residuary beneficiaries. The estate's contention ignores the first direction in Article Seven of the will, namely, that all estate taxes attributable to decedent's death are to be paid from the residuary estate. Thus, the burden of those taxes is not, as the estate contends, the burden as allocated by the proration statute. It is the burden as allocated by Article Seven of the will. That provision places the burden of all the estate taxes attributable to decedent's death on the residuary estate and further directs that that burden is not to be adjusted among the residuary beneficiaries. We find that the direction in Article Seven of the will that the burden of all estate taxes attributable to decedent's death be placed on the residuary estate "without adjustment among the residuary beneficiaries" means that such burden is to be borne by the residuary estate without change or adjustment among the residuary beneficiaries. Consequently, that direction does not alter, but rather confirms, the intent expressed by decedent in the other provisions of Article Seven of the will that *393 all such estate taxes not be prorated. To summarize, in Article Seven of her will, decedent directed that all estate, inheritance, or other death taxes attributable by reason of her death to her probate estate be paid (1) out of the residuary estate, (2) without adjustment among the residuary beneficiaries, and (3) without charging such taxes against or collecting them from any beneficiary of her probate estate. We conclude that these provisions of Article Seven of the will clearly and unambiguously express an intention by decedent to opt completely out of the proration statute. In fact, the Supreme Court of California has concluded in In re Law's Estate, 325 P.2d 449, 450 (Cal. 1958), that directions in a will that death taxes be paid from the residue of a testator's estate in the same manner as an expense of administration, and not be apportioned, prorated, or charged against any beneficiary, constitute an expression of intent by that testator to elect out of the proration statute. Such directions were found to indicate an intention to elect out of proration with respect to both the residuary and nonresiduary portions of an estate even where there *394 was more than one residuary beneficiary. See id. We find the directions in the testator's will in the case of In re Law's Estate to be similar to the directions in Article Seven of decedent's will. [11]
The estate seems to contend that the Supreme Court of California concluded that the testator in the case of In re Law's Estate elected out of the proration statute because the direction *395 in the testator's will that estate taxes be paid out of his residuary estate contained the following language: "in the same manner as an expense of administration." Id. at 450. The estate contends that since decedent's will here does not contain such "operative words", In re Law's Estate, supra, is distinguishable and therefore inapposite. While we agree that decedent's will in the present case does not contain the so-called "operative words" relied on by the estate, we disagree with the estate's contention that the Supreme Court of California grounded its conclusion in the case of In re Law's Estate on the presence of those words in the will there involved. We find nothing in the opinion of the Supreme Court of California in that case to suggest that it is essential for a testator to direct that estate taxes be paid in the same manner as administration expenses in order to express an intention to elect out of the proration statute. Nor does the estate direct us to any other authority that we believe supports its contention that "operative words", such as a direction that death taxes be paid in the same manner as administration expenses, *396 are necessary to express an intention to opt out of the proration statute, [12] and we have found none. [13] To the contrary, under California law, no specific language is required to elect out of the proration statute, provided that the language used clearly and unambiguously expresses the intention that it not apply. See Estate of Lindner, 149 Cal. Rptr. at 334; In re Armstrong's Estate, 366 P.2d at 494. We thus reject the estate's contention that a direction such as one to pay estate taxes in the same manner as administration expenses is necessary to express an intention to elect out of the proration statute.
*397 We have considered all of the other contentions advanced by the estate in support of its position that the provisions of Article Seven of the will do not express decedent's intention to elect out of the proration statute and do not find them to have merit. Construing Article Seven of the will as the estate contends does not comport with the plain meaning of the language used therein. In contrast, construing the words of Article Seven of the will as expressing an intention to opt out of the proration statute gives effect to the clear and unambiguous language of that article. See Cal. Prob. Code App. sec. 6160. We conclude that Article Seven of the will clearly and unambiguously expresses decedent's intention to elect out of the California proration statute. We therefore hold that, pursuant to section 2055(c), the deduction otherwise allowable under section 2055(a) for the charitable transfers under decedent's will must be reduced by the amount of Federal and California estate taxes payable out of those transfers. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect on the date of the death of Miriam G. McKay. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Those bequests were contingent upon the named beneficiaries' surviving decedent by 30 days. Although one of the named beneficiaries was an educational institution, that survival requirement applied to it as well. We assume that the educational institution was required to maintain its legal existence for 30 days following decedent's death in order to qualify for the bequest decedent made to it in her will. One of the six bequests lapsed because the designated beneficiary predeceased decedent.↩
3. It appears that the difference between the amount deducted in the return and the amount distributed to each charitable residuary beneficiary was the result of an increase after decedent's death in the size of the residuary estate due to income generated by the assets of the estate.↩
4. The estate contends that, once it has established that California has an apportionment or proration statute (namely, Cal. Prob. Code App. sec. 20110 (West 1991) (proration statute)), respondent has the burden of demonstrating that the language of the will clearly and unambiguously expresses an intent that that statute not apply to the estate. We disagree. Although the party contending against application of the proration statute bears the burden under California law of showing that it does not apply, Hoover v. Hartman, 186 Cal. Rptr. 669, 672↩ (Ct. App. 1982), that rule does not shift the burden of proof to respondent in the instant case. The estate has the burden of demonstrating error in respondent's determination.
5. We note that the cases cited herein construing the California proration statute were decided under former Cal. Prob. Code sec. 970↩ (West 1981), which was repealed and replaced without changes relevant here by Cal. Prob. Code App. sec. 20110 effective Jan. 1, 1987. 1986 Cal. Stat. ch. 783, sec. 25.
6. The estate takes no position with respect to the $ 3,000 bequest to the educational institution, presumably because no estate tax is attributable to that bequest.↩
7. The estate seems to believe that Ms. Neish's "voluntary agreement" to permit the charging of estate taxes attributable to those bequests against her share of the residuary estate is sufficient to shift the burden of those taxes from the entire residuary estate. Ms. Neish agreed to allow those taxes to be charged against her share of the estate in a telephone conversation with Mr. Showen concerning the preparation of the estate's estate tax return. However, a voluntary agreement cannot change the legal effect of the provisions of the will as of the date of decedent's death.↩
8. Ms. Neish could not recall whether she received notice of the proposed distribution.↩
9. This provision appears to concern estate taxes arising only with respect to probate property, and not nonprobate property. The estate does not contend that any of the taxes at issue are imposed with respect to nonprobate property. Therefore, we shall not consider any question of proration with respect to any taxes in respect of nonprobate property.↩
10. We note that, in other states, like New York, a direction to pay taxes out of the residuary estate does not necessarily preclude proration among residuary beneficiaries. See In re Shubert's Will, 180 N.E.2d 410, 414-415↩ (N.Y. 1962).
11. The only material difference, in our view, between Article Seven of the will and the pertinent provisions of the testator's will in the case of In re Law's Estate is that decedent's will here provides that death taxes are not to be adjusted among the residuary beneficiaries, while the will in the case of In re Law's Estate did not so provide. In re Law's Estate, 325 P.2d 449↩ (Cal. 1958). That difference does not help petitioner. We have found the presence of such a provision in Article Seven of the will here to confirm that decedent intended to opt out of the proration statute.
12. Although the estate also cites Estate of Silveira, 197 Cal. Rptr. 121 (Ct. App. 1983), and Estate of McAuliffe, 282 P.2d 541↩ (Cal. Dist. Ct. App. 1955), we find nothing in those cases that indicates to us that such "operative words" are essential to express an intention to elect out of the proration statute.
13. We have found cases in which California courts have construed wills that direct estate taxes to be paid from the residue of the testator's estate without specifying that those taxes are to be paid in the same manner as administration expenses to express an intention to elect out of the California proration statute. See, e.g., In re Wilson's Estate, 315 P.2d 451, 452 (Cal. Dist. Ct. App. 1957); In re Parker's Estate, 220 P.2d 580, 584↩ (Cal. Dist. Ct. App. 1950).